**UNITED STATES of America, for the use and benefit of P.J. Keating Company, Plaintiff,**

v.

**WARREN CORPORATION and National Grange Mutual Insurance Company, Defendant, Third-Party Plaintiff,**

v.

**BAKER FENCE, INC.; Salvatore Cosimi; Capone Bros., Inc.; Miller Engineering & Testing, Inc.; John D. Mazzaferro; John McCourt Co.; P.J. Equipment, Inc.; the Hession Company, Inc.; and the United States of America (Internal Revenue Service), Third-Party Defendants.**

Civ. A. No. 84–1502–Y.

United States District Court,
D. Massachusetts.

Jan. 13, 1986.

---

**11.** Defendants' Exhibit J, at para. 11.　　　**12.** Tr. at 90.

Jerome A. McCusker, Riemer & Braunstein, Boston, Mass., for plaintiff.

Steven J. Comen, Snyder, Tepper & Comen, Boston, Mass., for John McCourt Co.

Stephen E. Weyl, Debra L. Weiss, Sheehan, Phinney, Bass, & Green, Manchester, N.H., for Miller Engineering.

Leonard Salter, Wasserman, Salter & Rome, Boston, Mass., for Baker Fence.

Thomas J. Clark, Tax Div. Dept. of Justice, Washington, D.C., for the IRS.

Charles E. Snow, Charles E. O'Brien, Albany, N.Y., for defendant.

Bartholomew P. Molloy, Tyler & Reynolds, Boston, Mass., for National Grange.

John J. Curley, III, McEvilly & Curley, Leominster, Mass., for third party defendant.

## MEMORANDUM OF DECISION

YOUNG, District Judge.

This is a case brought under the Miller Act, 40 U.S.C. § 270a *et seq.* On September 30, 1982 the defendant, Warren Corporation ("Warren"), entered into a contract with the United States Department of the Army (the "Army") for the reconstruction of a roadway at Fort Devens, Ayer, Massachusetts (the "contract"). As required by the Miller Act, Warren provided a performance bond and a payment bond covering the work to be performed at Fort Devens. The defendant, third-party plaintiff, National Grange Mutual Insurance Company ("National Grange"), was the surety upon these two bonds.

Warren hired a number of sub-contractors, and by November 26, 1983 all work to be performed under the contract was complete except for topsoiling, seeding, and the correction of certain deficiencies. On that date Warren, apparently because of financial difficulties, executed an assignment and delegation of the contract to National Grange. Warren notified the Army of this assignment. On December 6, 1983, the Army informed Warren that it considered the assignment null and void. The next day Richard Walsh ("Walsh"), president of Warren, submitted a "Payment Estimate-Contract Performance" form to the Army seeking to collect $144,026.55 for the work performed under the contract.

On January 30, 1984 the Internal Revenue Service (the "Service") served a notice of levy on the Army for $152,041.51 owed to the United States by Warren. That same day, the Army approved Warren's Payment Estimate. Pursuant to the levy the Army paid $144,026.55 over to the Service on February 2, 1984. This represented the entire amount to which Warren was entitled on the contract.

Not surprisingly, the sub-contractors began to wonder how and whether they would get paid. P.J. Keating Company, one of the sub-contractors, brought this suit against Warren and National Grange to recover $78,217.58 owed it by Warren

for work done at the Fort Devens project. National Grange brought in the remaining unpaid sub-contractors and the Service as third-party defendants. National Grange's claim against P.J. Keating Company and the other sub-contractors is in the nature of an interpleader, and asks the Court fairly to divide the limited funds available under the payment bond. National Grange's claim against the Service seeks recovery of part of the contract proceeds upon which the Service levied. National Grange claims that the levy was wrongful and fraudulent, and that it therefore is entitled, to the extent of its liability on the payment bond, to the money earned by Warren under the contract. The Service now moves to defeat the claim of National Grange by summary judgment.

National Grange's third-party complaint, along with its memorandum in opposition to the present motion, spins an intriguing tale of fraud and deception on the part of the Service and the Army. According to National Grange, the Service devised a scheme to collect money owed it by Warren, Walsh, and another company controlled by Walsh, Walsh Co. Inc. Under this alleged scheme the Service would see to it that Warren was awarded the Fort Devens contract. In return, Warren agreed not to seek progress payments, but rather to allow its account to build up so that the Service could levy on it to satisfy the tax liabilities of the three related taxpayers. Since virtually all the work on the project was to be done by sub-contractors, Warren effectively would be getting these sub-contractors to pay its taxes. Unfortunately for National Grange, there is not a scintilla of evidence which suggests that this bizarre "plot" is anything other than the product of National Grange's corporate imagination.

■ In the first place, the documents submitted by the Service demonstrate conclusively that the levy related solely to the tax obligations of Warren Corporation. Likewise, there is absolutely no evidence of an agreement between the Service and Walsh. In its answers to National Grange's interrogatories the Service denies knowledge or record of any such agreement. Moreover, the record is absent any deposition or affidavit testimony from Walsh, the other party one would expect could verify National Grange's theory. In short, only National Grange's counsel claims knowledge of the agreement. National Grange points to the fact that Warren did not seek progress payments before the work was completed as its "smoking gun." The Court rules that, as matter of law, that evidence is an insufficient basis from which the trier of fact could infer the alleged agreement.

■ Summary judgment is appropriate where there exists no disputed issues of material fact and the moving party is entitled to judgment as matter of law. Rule 56(c), Fed.R.Civ.P. Bare allegations do not create disputed issues of fact, however. A party opposing a motion for summary judgment has an affirmative duty to adduce some evidence which supports his claim of a factual dispute. *Massaro v. Vernitron Corp.*, 559 F.Supp. 1068, 1073 (D.Mass. 1983). As the preceding discussion demonstrates there is insufficient evidence before the Court to create a question of fact concerning the alleged agreement between Walsh and the Service. Viewing the record now before the Court in the light most favorable to National Grange, the only question in the case is this: Is the United States' claim to the contract proceeds superior to National Grange's claim, notwithstanding the assignment by Warren, and the fact that National Grange is subrogated to the rights of the subcontractors? The Court holds that it is, and the Service's motion for summary judgment therefore must be allowed.

The papers filed in this case suggest three bases by which National Grange seeks to attack the Service's levy on the contract proceeds; (1) 40 U.S.C. § 270a(d), (2) 26 U.S.C. § 7426(a)(1), and (3) as a subrogee of the sub-contractors. Neither the two statutes, nor the subrogation theory are sufficient to overcome the United States' superior right of setoff.

■ National Grange's reliance on 40 U.S.C. § 270a(d) is clearly misplaced. That statute specifies the circumstances under which the United States can claim against a performance bond for taxes withheld by the contractor. Contrary to the arguments of National Grange, the section is not applicable to an attempt by a materialman or an assignee to recover contract proceeds.

■ Section 7426(a)(1) of Title 26 likewise is unavailing for National Grange. That section sets forth the method by which a party may challenge the actions of the United States in levying for taxes upon property. It provides that:

> any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States.

National Grange claims that the assignment to it by Warren of the contract proceeds gives it a sufficient interest to attack the levy. For the reasons that immediately follow the Court disagrees, and rules that because National Grange cannot properly claim an interest in the proceeds it is not within the class of persons to which § 7426 is available.

Section 3727 of Title 31 specifies the only method by which an entity other than a financial institution can assign any part of a claim against the United States. Section 3727(b) requires, *inter alia,* that the assignment be made only after a claim is allowed, and that the assignment shall be acknowledged before an official who shall certify that he explained the assignment when it was acknowledged. These rather technical requirements are intended, in part, to ensure that the United States is able to avail itself of rights of setoff or cross-claims against original claimants which might not be applicable to an assignee. *United States v. Shannon,* 342 U.S. 288, 291–92, 72 S.Ct. 281, 283–84, 96 L.Ed. 321 (1952); *McKenzie v. Irving Trust Co.,* 323 U.S. 365, 369, 65 S.Ct. 405, 407, 89 L.Ed. 305 (1945). The applicability of this rationale to the case at bar counsels a strict adherence to the literal requirements of the statute. Thus, Warren's attempted assignment must fail because it was made before payment was authorized, and was not properly certified. Although the assignment may well have altered rights as between National Grange and Warren, as between National Grange and the Army the assignment was null and void. Therefore, National Grange cannot claim an "interest" in the proceeds of the contract.

■ National Grange's final argument is that as subrogee of the materialmen its claim is superior to the United States' right of setoff.[1] If National Grange means to argue that the sub-contractors have viable claims against the United States, it is wrong. "[N]othing is more clear than that laborers and materialmen do not have enforceable claims against the United States for their compensation." *United States v. Munsy Trust,* 332 U.S. 234, 241, 67 S.Ct. 1599, 1602, 91 L.Ed. 2022 (1947). This is the very reason the Miller Act requires the contractor to provide a payment bond. If, instead, National Grange means to argue that it should prevail over the United States as a competing creditor of Warren, that argument too is without merit. In *Munsey Trust* the Supreme Court said that:

> The government has the same right "which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him." ... And one whose own appropriation and payment of money is necessary to create a fund for general creditors ... is not compelled to lessen his own chance of recovering what

---

**1.** Although the formal mechanism by which the setoff in this case was accomplished was a levy directed from one agent of the government to another, the cases uniformly assume that the United States is to be treated as a single entity, and therefore may set off an account receivable in one department against an account payable in another. *See Aetna Ins. Co. v. United States,* 456 F.2d 773 (Ct.Cl.1972); *Barrett v. United States,* 367 F.2d 834 (Ct.Cl.1966).

is due him by setting up a fund undiminished by his claim, so that others may share it with him.

332 U.S. at 240, 67 S.Ct. at 1602; *accord Barrett v. United States*, 367 F.2d at 838 (the claim "of the surety is subordinate and inferior to the right of the United States to set off the amount of taxes owed it by the contractor.").

In summary, the claim of National Grange for reimbursement from the United States must fail. The record properly before the Court does not evince a genuine dispute as to the fact that Warren owed the government an amount in excess of the total contract price. Therefore the United States had a right to set off the taxes owed and refuse payment. National Grange's conspiracy argument is not supported in any way by the record, and thus does not affect the Court's analysis. The motion of the United States for summary judgment is ALLOWED.

### ORDER

It is hereby ORDERED that:

1) The motion of National Grange Mutual Insurance Company to amend this Court's Order of November 8, 1985 is allowed. Accordingly, the clerk of the court shall:

   a) Vacate the summary judgments granted in favor of Salvatore Cosimi, John D. Mazzaferro, and The Hession Company, Inc. (the "non-appearing parties") against National Grange,

   b) Enter a default judgment against the non-appearing parties, as provided by Rule 55 of The Federal Rules of Civil Procedure for failure to plead or otherwise defend, and

   c) Forthwith refund to National Grange $4,111.73 of $68,277.54 which it paid into this Court on November 25, 1985.

2) Summary Judgment is granted as to damages in the following amounts:

| | |
|---|---|
| P.J. Keating Company | $49,022.68 |
| Baker Fence, Inc. | $ 2,245.81 |
| Capone Bros., Inc. | $ 4,234.94 |
| Miller Engineering | $ 5,004.93 |
| John D. Mazzaferro | $ 769.99 |
| John McCourt Co. | $ 2,887.46 |

The clerk of the court shall distribute the proceeds of the bond in the above stated amounts to the proper parties on January 31, 1986.

3) Judgment shall enter against Warren Corporation in favor of P.J. Keating Company in the amount of $29,194.90.

4) In accordance with the Memorandum of Decision issued this date the motion for summary judgment of the United States (Internal Revenue Service) is allowed.

5) The only matter in this case that remains to be tried is John McCourt Company's chapter 93A claim.