UNITED STATES of America, for the Use and Benefit of P.J. KEATING COMPANY, Plaintiff, Appellee,

v.

WARREN CORPORATION, et al., Defendants, Appellees.

National Grange Mutual Insurance Company, Third-Party Plaintiff, Appellant.

No. 86–1345.

United States Court of Appeals, First Circuit.

Heard Sept. 10, 1986.

Decided Nov. 14, 1986.

---

Charles E. O'Brien, Albany, N.Y., for third-party plaintiff, appellant.

Raymond W. Hepper, Tax Div., Dept. of Justice, with whom Roger M. Olsen, Asst. Atty. Gen., Michael L. Paup and Wynette J. Hewett, Tax Div., Dept. of Justice, Washington, D.C., and William F. Weld, U.S. Atty., Boston, Mass., were on brief for the U.S.

Before CAMPBELL, Chief Judge, ALDRICH and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

Appellant National Grange Mutual Insurance Company ("National Grange") appeals a decision of the district court granting summary judgment in favor of the United States of America ("Government"). We find that the district court lacked jurisdiction to consider appellant's claim. Accordingly, we vacate the decision of the district court and remand to that court with instructions to dismiss the complaint.

### I. Factual Setting.

The events culminating in the instant appeal began in September, 1982, when Warren Corporation ("Warren") contracted with the United States Army ("Army") to perform a $152,000 road construction project at Fort Devens in Ayer, Massachusetts. National Grange, serving as surety, executed a payment bond for the Fort Devens project in accordance with the Miller Act, 40 U.S.C. § 270a *et seq.* The payment bond, designed to protect subcontractors and materialmen against nonpayment by Warren, issued in the amount of $76,125, or approximately fifty percent of the total contract amount. Warren, however, employed subcontractors and materialmen to complete nearly ninety percent of the work on the project.

Warren experienced substantial financial difficulties during 1982 and 1983. As a result, it was unable to pay its subcontractors and materialmen and was forced to surrender to appellant its right to remain in control of the contract just as work neared completion. Warren also failed to pay substantial amounts of withholding of income tax, social security, and unemployment taxes during this period, prompting the United States Internal Revenue Service ("IRS") to file notices of tax liens on four occasions in late 1983 and early 1984.

On December 7, 1983, Warren submitted a payment estimate form to the Army, seeking $144,026.55 for work performed under the contract. The Army approved

this request on January 30, 1984, the same day that the IRS served upon the Army its third notice of levy for $152,041.51 of taxes, penalties, and interest left unpaid by Warren.[1] The Army responded by transferring the entire earned contract balance to the IRS, which applied the funds against Warren's unpaid tax liabilities. Shortly thereafter, one of the unpaid subcontractors filed suit against both Warren and National Grange. National Grange responded by filing a cross-complaint against the United States as third-party defendant, alleging that the IRS had wrongfully levied upon the earned contract balance to reduce Warren's outstanding tax liability. *See* 26 U.S.C. § 7426(a)(1).

Appellant's wrongful levy action is apparently premised on its belief that Richard M. Walsh, Warren's president and principal shareholder, conspired with officers of the Army and IRS to divert the earned contract balance directly to the IRS in partial satisfaction of Warren's unpaid tax liabilities. Appellant alleges that this diversion had the effect of depriving the subcontractors and materialmen, whose sole protection was the fifty percent payment bond, of money they had rightfully earned by performing various aspects of the Fort Devens project. According to appellant, the Army's payment to the IRS permitted Warren to receive a tax credit amounting to the full $144,026.55 earned at the time it abandoned control of the project, even though Warren had actually performed just over ten percent of the work. Appellant also alleges that the transfer conferred an undeserved benefit on Walsh, who otherwise would have been personally liable for Warren's tax liability pursuant to 26 U.S.C. § 6672. After numerous skirmishes concerning discovery below, the district court

rejected appellant's conspiracy theory as unfounded and granted the Government's motion for summary judgment on January 13, 1986. 624 F.Supp. 1163. This appeal ensued.

## II. Jurisdiction.

Appellant now admits that its third-party complaint against the United States is premised solely upon 26 U.S.C. § 7426(a)(1), which permits an interested party to bring a wrongful levy action against the United States in district court.[2] At oral argument, however, the United States contended for the first time that the district court lacked jurisdiction to entertain appellant's complaint because the instant case did not involve an actual levy. We are not precluded from considering this argument on appeal because it is a well established rule in the federal courts that subject matter jurisdiction may be challenged at any time before the case is finally decided. *Eisler v. Stritzler*, 535 F.2d 148, 151 (1st Cir.1976).

The Government's basic position is that the Army's transfer of the earned contract balance to the IRS constituted a "set off" rather than a "levy." A levy, as described in section 7426, involves the Government's seizure of property to satisfy the liability of a taxpayer. *See generally* 26 U.S.C. § 6331(b) ("The term 'levy' ... includes the power of distraint and seizure by any means."). A set off, on the other hand, merely involves the Government's application of money owed to a taxpayer to reduce that taxpayer's outstanding tax liability. The Government argues that the instant case involves a set off because the entity transferring the funds, the Army, and the entity collecting the funds, the IRS, are both component agencies of the federal government.

---

1. The IRS served the first notice of levy for $97,362.32 on November 25, 1983, and a second notice on January 26, 1984 for $136,662.06.

2. This section reads:
   **(a) Actions permitted.—**
   **(1) Wrongful levy.**—If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out

of which the levy arose) who claims an interest in or lien on such property and that such property was *wrongfully* levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary or his delegate. 26 U.S.C. § 7426(a)(1).

The Government's right to set off funds in this manner has been established at least since the case of *United States v. Munsey Trust Co.*, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947)[3], and has been consistently reaffirmed in recent years. *See United Sand & Gravel Contractors, Inc. v. United States*, 624 F.2d 733, 736 (5th Cir.1980); *Blake Construction Co. v. United States*, 585 F.2d 998, 1005, 218 Ct.Cl. 163 (1978); *Aetna Insurance Co. v. United States*, 456 F.2d 773, 775, 197 Ct.Cl. 713 (1972); *Algonac Manufacturing Co. v. United States*, 428 F.2d 1241, 1250, 192 Ct.Cl. 649 (1970); *Barrett v. United States*, 367 F.2d 834, 836, 177 Ct.Cl. 380 (1966). Furthermore, in light of the Supreme Court's decision in *Munsey Trust*, the Claims Court has routinely held that the Government's set-off right is superior to a claim by a Miller Act surety under its payment bond to the same contract earnings. *Aetna*, 456 F.2d at 777; *Barrett*, 367 F.2d at 836. This factor no doubt influenced appellant's decision to allege the existence of a wrongful levy, because section 7426 contains a waiver of sovereign immunity and permits plaintiffs to commence wrongful levy actions in district court.

Appellant attempts to find support for its theory of district court jurisdiction by relying upon the Fifth Circuit's interpretation of section 7426 in *United Sand & Gravel*, 624 F.2d at 733. In that case, the court dismissed a subcontractor's wrongful levy action against the United States as time barred pursuant to the strict nine month limitation period set forth in 26 U.S.C. § 6532(c). The court, however, also addressed the operation of section 7426 in response to plaintiff's eleventh hour attempt to avoid section 6532(c) by characterizing the action of the IRS as a set off, not a levy. The court stated in dicta that the government's actions acquire a different legal effect if "the I.R.S. goes through the formalities of levying upon property or rights to property of a tax delinquent in the

hands of another agency of the government...." *United Sand & Gravel*, 624 F.2d at 736. Purporting to support its position, however, the court merely cited three truisms: (1) that there is nothing in 26 U.S.C. § 6331 excepting property in the hands of a government agency from an IRS levy; (2) that the IRS often proceeds against such property by serving a formal notice of levy upon the other agency; and (3) that the IRS actually levies upon rights to the property that belong to the taxpayer, not the other agency.

None of these factors cited by the *United Sand & Gravel* court persuades us that the mere service of a notice of levy upon a government agency is sufficient to create a new right of action in district court for a plaintiff who would otherwise have had to challenge the government's set off in the Claims Court. Although we admit that section 6331 can be read to encompass formal levies against property held by government agencies, this characterization of a property transfer between two components of the federal government simply ignores reality. As other courts have correctly recognized, the action of the IRS in serving a notice of levy upon another federal agency does not magically transform a traditional set off by the federal government into a levy. *Aetna*, 456 F.2d at 773 (IRS serves notice of levy upon General Services Administration, but transfer treated as set off); *Barrett*, 367 F.2d at 835 (IRS serves notice of levy upon Public Health Service, but transfer treated as set off). Furthermore, the fact that the property rights transferred to the IRS actually belong to the taxpayer has no bearing on the distinction between levies and set offs because in both cases the taxpayer, by definition, possesses rights in the transferred property.

For these reasons, we respectfully disagree with the Fifth Circuit's analysis, and hold that a government agency's transfer to the IRS of funds owed to a delinquent

---

**3.** The Supreme Court held in *Munsey Trust* that "[t]he government has the same right 'which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him.'" *Munsey Trust*, 332 U.S. at 239, 67 S.Ct. at 1601 (quoting *Gratiot v. United States*, 15 Pet. 336, 40 U.S. 336, 370, 10 L.Ed. 759 (1841)).

taxpayer should properly be characterized as a set off by the federal government even if the transfer occurs pursuant to a formal notice of levy. To hold otherwise would place undue significance on the type of form used by the IRS to notify the other agency of the taxpayer's delinquency. Accordingly, despite the three notices of levy issued by the IRS, we find that the Government in the case at bar has simply asserted its well established right to set off an unpaid earned contract balance against the unpaid tax liability of a government contractor.

Because we find that the Government has properly exercised its set off rights in the instant case, the wrongful levy cause of action provided by section 7426 is not available to appellant. The regulations pertaining to section 7426, moreover, support this finding that no cause of action for wrongful levy exists when the United States simply sets off an amount owed to a taxpayer against that taxpayer's accrued liability. 26 C.F.R. § 301.7426–1(a)(1) (1986).[4] Furthermore, the conclusion that appellant's suit "does not fall within the compass of Section 7426 is buttressed by the principle that waivers of sovereign immunity must be strictly construed." *Interfirst Bank Dallas, N.A. v. United States*, 769 F.2d 299 (5th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 1458, 89 L.Ed.2d 716 (1986); *see also Nickerson v. United States*, 513 F.2d 31, 33 (1st Cir.1975) (per curiam) (section 7426 involves a waiver of sovereign immunity and must therefore be strictly construed). This follows from the fundamental principle that the United States may be sued in its sovereign capacity only when it has explicitly waived its sovereign immunity. *See, e.g., Ruckelshaus v. Sierra Club*, 463 U.S. 680, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983); *Lehman v. Nakshian*, 453 U.S. 156, 160–61, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981).

**4.** The relevant portion of the regulation provides:

> No action is permitted under section 7426(a)(1) unless there has been a levy upon the property claimed. For example, no cause of action arises under this section where the

We therefore hold that the district court lacked jurisdiction to consider this matter as a wrongful levy action pursuant to section 7426. Because appellant has asserted no other basis for district court jurisdiction in this case, we vacate the decision below and remand the case to the district court with instructions to dismiss appellant's third-party complaint. Appellant's remedy, if indeed one exists, must be sought in the Claims Court.

*Vacated and remanded with instructions to dismiss the complaint.*

United States sets-off an amount due to the taxpayer against taxes owed by him *since no levy has been made.*

