Nicholas J. CAPUANO,
Plaintiff–Appellant.

v.

UNITED STATES of America,
Defendant–Appellee.

No. 89–3813.

United States Court of Appeals,
Eleventh Circuit.

March 17, 1992.

Nicholas J. Capuano, pro se.

K.M. Moore, Asst. U.S. Atty., Pensacola, Fla., Carol Koehler Ide, Trial Atty., Tax Div., U.S. Dept. of Justice, Gary R. Allen, Chief, Janet Kay Jones, Patricia Bowman, Brian C. Griffin, Anne B. Durney, Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before HATCHETT, Circuit Judge, JOHNSON * and SMITH **, Senior Circuit Judges.

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

**1428**

EDWARD S. SMITH, Senior Circuit Judge:

Appellant Capuano, an attorney, brought a wrongful levy action pursuant to 26 U.S.C. § 7426 against the Internal Revenue Service (IRS) to recover from seized funds the $25,000 fee due him as result of settlement of a forfeiture action between his client, Agustin Santana, and the United States. (United States District Court for the Northern District of Florida, Pensacola Division, No. 89–30023 WEA.) Judgment was entered on 20 September 1989 in favor of the government. Capuano appeals. We reverse.

Appellant contends that the trial court erred in finding that the agreement for payment of his fee could not take precedence over the IRS claim, for taxes against proceeds of the check issued in payment of the settlement, and erred further in concluding that the government could negotiate the check, on which Capuano, the nontaxpayer, was one of the named payees, without consent or endorsement by appellant.

The government contends that although it proceeded through the formalities of levy, it did not levy on taxpayer's property but actually exercised its common law right of set-off and therefore the district court lacked subject matter jurisdiction to hear a wrongful levy claim; further, that if jurisdiction does lie, the IRS had priority over taxpayer's lawyer in the seized fund, and the IRS properly obtained and negotiated the $100,000.00 check settling taxpayer's interest in the federal forfeiture action.

The facts were essentially fully stipulated; those pertinent to the appeal are as follows:

On 1 June 1986 the Florida Highway Patrol arrested Santana and seized $543,-875 in United States currency from the trunk of his car. The next day Santana retained Capuano to represent him. Also on 2 June 1986 Santana and the State released $268,367 of the seized funds to the IRS to be applied against Santana's 1986 estimated federal income tax. On 24 June 1986 the retainer agreement was reduced to writing. Under its terms appellant was to receive a fee of $25,000 contingent upon the return to Santana of part or all of the seized funds. State criminal charges were brought against Santana in June 1986 and dismissed in August. State forfeiture action against the seized funds was brought in July 1986. On 9 December 1986 the United States, pursuant to 21 U.S.C. § 881, filed a civil forfeiture in rem action against the seized funds, and the $543,875 in currency was seized by the United States Marshal pursuant to a Warrant and Notice of Seizure. (United States District Court for the Northern District of Florida, Tallahassee Division, No. TCA 86–7318.) The next day, 10 December 1986, the State of Florida dismissed the state forfeiture action.

On 8 June 1988 a settlement conference with respect to the forfeiture action still pending in federal court was held in Tallahassee in the office of George W. Blow, III, Assistant United States Attorney. Present were Mr. Blow representing the United States, Wayne Evans representing the Florida Highway Patrol, and Nicholas J. Capuano, appellant herein. At that conference Capuano was asked as to the amount of fee he was claiming and was advised by Mr. Evans that the amount of appellant's fee would have a bearing on the amount of the settlement that Mr. Evans would recommend to the department. Further negotiations were had on 8 and 9 June 1988, including an offer by telephone by Mr. Evans to settle the case for $100,000, a counteroffer by appellant which was rejected by Evans, and an agreement by Blow to Evans' and Capuano's agreement that the settlement check in the amount of $100,000 would be made payable jointly to Agustin R. Santana and Nicholas J. Capuano in order to protect Capuano's fee.

Following these negotiations, on 9 June 1988 a written Stipulation for Entry of Final Judgment of Forfeiture was executed and filed in the district court setting forth that the amount of settlement ($100,000.00) shall be paid by the U.S. Marshal by a check payable jointly to Agustin R. Santa-

na and Nicholas J. Capuano. A release in full of all claims against the State of Florida and the United States of America was also executed by Capuano and Santana.

On or about 7 July 1988 IRS made a jeopardy assessment against Santana for the taxable period ended 30 June 1988 and on 12 July 1988 caused a Notice of Levy to be served upon the United States Marshal who had not at that time issued the settlement check as ordered by the Final Judgment entered by the district court on 9 June 1988. Thereafter, on 14 July 1988 appellant was advised that the $100,000.00 settlement check had been issued by the United States Marshal on 12 July 1988 and made payable on the same day to Agustin R. Santana, Nicholas J. Capuano *and the Internal Revenue Service.*

Capuano never endorsed the check on which he was a named payee. It was not until later that he was informed that the IRS had subsequently endorsed and negotiated the check and credited the entire $100,000.00 to Santana's account without contacting Capuano, and had negotiated the check without Capuano's consent or endorsement. Capuano made immediate demand upon the IRS for payment of his fee.

Appellant filed the wrongful levy action on 25 January 1989 following denial of his motion, pursuant to Federal R.Civ.P. 60(b), to set aside final judgment. At the Rule 16 [1] pretrial conference the district court found that there were no genuine issues of material fact and granted judgment in favor of the government, sua sponte. This appeal followed.

### Jurisdiction

■ A federal tax lien is placed on all property and rights to property when a person who is liable to pay any tax does not do so after the Government demands payment.[2] The Supreme Court, in *United States v. Nat'l Bank of Commerce,*[3] has delineated three customary methods of forced collection. There are two principal tools for the purpose of the collection of unpaid taxes. The first is the *lien foreclosure* action brought pursuant to I.R.C. sec. 7403. This action can be instituted in federal district court to enforce a lien on property; all persons claiming an interest in the property must be made party.

The second tool used to collect unpaid tax is the administrative *levy*. Levy is a provisional remedy which includes the power of distraint and seizure without requiring any judicial intervention. If the taxpayer's property is in the hands of another, a notice of levy may be served on the custodian pursuant to I.R.C. sec. 6332(a). Consequently the Government obtains constructive possession of the property even though it is in the hands of a custodian. If the custodian honors the levy he is discharged from liability to the delinquent taxpayer. However, if the custodian chooses not to honor the levy he incurs liability to the government for his refusal. Although levy is a forceful remedy it is also provisional, so the priority of interests in the seized property is determined in a Section 7426 wrongful levy action after the levy is executed.[4]

The *set-off* is indeed a third way to collect unpaid taxes, available to the government in limited situations. The right of set off "belongs to every creditor to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due him." [5] The right of set-off is within the equitable power of a court to offset mutual

---

**1.** Fed.R.Civ.P.

**2.** 26 U.S.C. § 6321 (1988).

**3.** 472 U.S. 713, 720, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985).

**4.** As noted above, such a Notice of Levy, under date 12 July 1988, was served on the United States Marshal following the jeopardy assessment of 7 July 1988 against Santana. Although

that assessment states that it is for the taxable period ended 30 June 1988 there appears to be no dispute that it was for 1986. In any event, the wrongful levy action brought by Capuano was in response to the Marshal's payment pursuant to this Notice of Levy.

**5.** *United States v. Munsey Trust Co.,* 332 U.S. 234, 239, 67 S.Ct. 1599, 1601, 91 L.Ed. 2022 (1947) (quoting *Gratiot v. United States,* 40 U.S. (15 Pet.) 336, 370, 10 L.Ed. 759 (1841)).

debts running between two parties.[6] In the present context where the government owes a debt to a delinquent taxpayer, the government can apply the debt it owes to the taxpayer against the taxes owed by the taxpayer to the government. In principle, the party owed the greater debt is due the remainder of the debt owed him after offset of the debt he owes to the other party. It goes without saying that neither party may offset moneys in its hands belonging to some other party.

The government asserts that it actually exercised its right to set off Santana's tax debt even though the IRS obtained the $100,000 settlement amount from the U.S. Marshal by process of levy. The government maintains that the $100,000 forfeiture settlement due Santana and Capuano which was in the hands of the United States Marshal was simply turned over to the IRS in order to set off the tax liability that Santana owed the government. The government argues that because it exercised its right to set off the settlement judgment against Santana's tax debt, there was no levy that can support Capuano's Section 7426 wrongful levy action. Therefore, the government exhorts that there is no subject matter jurisdiction.

■ In *United Sand and Gravel Contractors, Inc. v. United States,*[7] the IRS served a notice of levy upon the Army Corps of Engineers (Army) on account of money owed by the government to a prime contractor. The subcontractor who also had an interest in the money which was owed to the prime contractor filed an action for wrongful levy against the United States. The district court dismissed the action because the subcontractor did not file it within the nine-month period established by I.R.C. sec. 6532(c).[8] On appeal to the Fifth Circuit, the subcontractor argued that the time bar does not operate because the government had conducted a set-off and not a levy. The court concluded that "if the IRS goes through the formalities of levying upon property or rights to property of a tax delinquent in the hands of another agency of the government, the legal effect of such action is [not] the same as if the government had proceeded by set-off."[9]

Former Fifth Circuit decisions rendered prior to 1 October 1981 are binding on this circuit.[10] As in *United Sand,* the legal effect of the levy procedures employed by the IRS in this case is not the same as if the government had proceeded by set-off. Appellant responded appropriately by filing a wrongful levy action and the district court did have jurisdiction.

### Reliance

We note the existence of two opinions in other circuits on this issue, one agreeing with the *United Sand* analysis,[11] and one not.[12]

The First Circuit disagreed with the Fifth Circuit conclusion in *United Sand* by determining that the rationale there merely comprised a set of truisms and that characterizing the government's action a levy just because the IRS issued three notices of levy on the Army "would place undue significance on the type of form used by the [IRS] to notify the other agency of the taxpayer's delinquency."[13]

We do not share with the First Circuit the same preference for substance over form in the particular circumstances of this

---

**6.** 80 C.J.S. Set-off and Counterclaim § 5 (1953).

**7.** 624 F.2d 733, 736 (5th Cir.1980).

**8.** I.R.C. sec. 6532(c) (1988).

**9.** *United Sand,* 624 F.2d at 736.

**10.** *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981).

**11.** *Arford v. United States,* 934 F.2d 229 (9th Cir.1991).

**12.** *United States v. Warren Corp.,* 805 F.2d 449 (1st Cir.1986).

**13.** *Warren,* 805 F.2d at 453. The First Circuit also characterized the conclusion of the Fifth Circuit as dicta. The conclusion that the governmental action was a levy is not dicta because it was necessary to determine whether the time bar was applicable. If the Fifth Circuit had concluded that the governmental action was not a levy, the time bar would have been inapplicable. Hence, the court could not have dismissed the case for being out of time as they did.

case. These circumstances make the result compelled by *United Sand* all the more appropriate here. Interested persons other than the Internal Revenue Service and the taxpayer, including the State of Florida and Capuano, were in fact negotiating in good faith a figure based in part on the amount of the attorney fee. They, and in a sense the United States Marshal, were asserting or acting to protect rights within the legal framework generated by the form of governmental action utilized. Moreover, we believe that the method which the IRS used to obtain money, owed to a delinquent taxpayer and held by another agency, is significant. This significance lies in how accessible the money, in the hands of another governmental agency, is to the IRS. When the money is not accessible to the IRS, so that it is necessary to invoke the process of levy with all its forceful accoutrements to obtain the money, the IRS may be required to justify its right to the levied money in a wrongful levy proceeding. Although the IRS is permitted to offset "moneys of the debtor," it is not permitted to offset just anyone's money.

The instant case is illustrative. The U.S. Marshal had custody of the money subject to the forfeiture action, pending a disposition by the district court. In the Final Judgment of Forfeiture dated 9 June 1988 the court ordered that all but $100,000 of the money was to be forfeited to the United States pursuant to 21 U.S.C. § 881. The Marshal was ordered to pay that $100,000 by check payable jointly to Santana and his attorney, Capuano. Thereafter, on 7 July 1988 the IRS made the jeopardy assessment. However, thirty-three days after the court judgment was entered, the Marshal, after being served the Notice of Levy, departed from that court order and instead issued a check payable to Santana, Capuano *and the IRS.*

Although the check was eventually remitted to the IRS pursuant to the levy, this is clearly a case where the access of the IRS to the money in the hands of another agency was limited. The money was in the hands of an executive governmental agency (U.S. Marshal Service), but the disposition of that money was subject to more

than a Notice of Levy; it was restricted by a judgment of the judicial branch. Consequently, it was necessary for the IRS to execute the forceful process of levy to obtain access to the settlement amount in the Marshal's hands. If it is called a levy, and it acts like a levy, then it is a levy.

Most truisms and cliches speak a general truth in efficient and memorable, if hackneyed words, as does this one. So does the cliche: "Substance will prevail over mere form." But where an issue involves more than *mere* form, it may not be resolved by a mere cliche about substance. Unlike most substance-over-form situations, no one here is *claiming* a benefit through mere form which in substance would not confer the desired benefit. Here we are faced with a specific *form of procedure* provided by law, which has not only been elected over other available forms of procedure to assert the rights of one party, the IRS; the form of procedure elected, i.e. levy, put *several* disparate parties on notice as to what procedures would be appropriate in responding to the claim asserted. They did so respond, and they responded to the procedures elected. They did not and should not respond to other procedures that *might* have been elected. It would be unconscionable for one party in that form of procedure to have the unilateral ability to determine that really another form of procedure was being used, to which the responses being made by the other parties would be inappropriate or even futile.

In such a scenario, form itself possesses substance and may not lightly be disregarded to achieve other consequences of substance available through other and different forms of procedure. The desirable principle stated by the "substance over form" cliche is stood on its head. Not only do the rules change in the middle of the game, the game itself is changed. It is as if one team has exerted a football down to the one inch line and the other team attempts to nullify those gains by claiming they were really playing hockey.

The nature of tax gathering too easily gathers a lot of complaints from the citizenry, many undeserved by an impressive

agency staffed by many impressive and dedicated employees. The Internal Revenue Service does not need the criticism generated by subjecting all other parties to a good faith compliance with the indicated rules and then appearing as if on whim it can treat those efforts as meaningless.

As previously stated, an administrative levy is only a provisional remedy.[14]

> Congress ... balanced the interest of the government in the speedy collection of taxes against the interests of any claimants to the property, and reconciled those interests by permitting the IRS to levy on the assets at once, leaving ownership disputes to be resolved in a postseizure administrative or judicial proceeding.[15]

Because the IRS did levy the funds from the Marshal, the IRS is subject to a wrongful levy action by Capuano in the district court to determine the relative priorities of the claimed interests. For the additional reasons stated, we reject appellee's contention that the wrongful levy action fails for lack of jurisdiction.

### Notice, and the Pretrial Conference

■ Because the district court granted judgment sua sponte to appellees at the Rule 16 pretrial conference, we treat this case as a grant of summary judgment to the government.[16] Concluding that the district court had jurisdiction, we review to determine whether there were any genuine issues of material fact before the district court, and if not, which party is entitled to judgment as a matter of law.[17]

### Priority

The priority battle now engages the IRS assessment for taxes versus Capuano's attorney lien.

■ Many speeches have been made and articles written about our unique and marvelous system of "self-assessment" of income tax. This image is appealing but not quite accurate. In the old days before computers, *assessment* literally occurred when the scrivener took pen in hand and performed the physical act of actually entering a debt amount against the taxpayer in his account on the books of the IRS. Notwithstanding the replacement of quills and little men wearing green eyeshades by modern accounting machines, taxes are not literally "self-assessing". There still must be an assessment of the tax by the IRS against the taxpayer, before the tax debt is created. A federal tax lien for that debt attaches to a taxpayer's property when the tax is assessed and a demand for payment of this debt made.[18] Such lien is perfected when notice of the lien is filed in accordance with the relevant state law or with the clerk of the United States district court where the property subject to lien is situated.[19] A perfected tax lien is prior to any other security interest which is not choate at the time that notice of the tax lien is filed.[20] In order for the lien to be choate, "the identity of the lienor, the property subject to the lien, and the amount of the lien must be established."[21]

We need not reenter the debate whether an "assessment" occurs when a taxpayer states and/or pays his declaration of "estimated tax." Whatever the obligation thus created, it was paid, extinguished and *satisfied* in this case when Santana and the State of Florida released $268,367 to the IRS on 2 June 1986. If an assessment or lien existed in 1986 it was paid and satisfied in 1986. This record discloses no as-

---

**14.** *National Bank of Commerce,* 472 U.S. at 728, 105 S.Ct. at 2928.

**15.** *Id.* at 729, 105 S.Ct. at 2929.

**16.** It is generally improper to award summary judgment sua sponte at a Rule 16 pretrial conference without the 10–day notice mandated by Rule 56(c). *See Milburn v. U.S.,* 734 F.2d 762 (11th Cir.1984). The error was harmless in this case because Capuano was able to introduce evidence sufficient to justify summary judgment

in his favor. *See Dennis v. Liberty Mutual Insur. Co.,* 791 F.2d 846, 850 (11th Cir.1986).

**17.** Fed.R.Civ.P. 56(c).

**18.** I.R.C. sections 6321, 6322.

**19.** I.R.C. sections 6323(a), (f)(1) (1988).

**20.** *See* I.R.C. section 6323(a).

**21.** *United States v. City of New Britain,* 347 U.S. 81, 84, 74 S.Ct. 367, 369, 98 L.Ed. 520 (1954).

sessment and no consequent lien until the jeopardy assessment of 7 July 1988, for whatever period. The lien that arose in 1988 does not relate back to an assessment or to any other "obligation" that was satisfied in 1986.

■ Our inquiry goes to the question who has the priority under the general rule of "first in time, first in right" at the time the tax lien arose on 7 July 1988. The government has conceded that Capuano had a valid charging lien under Florida law and that his lien was choate before the IRS made a jeopardy assessment and served its notice of levy.[22] First, there was a contract between Capuano and Santana. Second, the contract provided that the attorney fee would be paid out of any recovery in the forfeiture action. Third, Capuano had not been paid the agreed fee. Last, the government admits that all interested governmental parties had notice of the attorney's lien, at the latest, when the Final Judgment of Forfeiture was entered and filed on 9 June 1988. Therefore, Capuano's charging lien for $25,000 of the $100,000 settlement amount was choate as of 9 June 1988.

The IRS, having made its jeopardy assessment on 7 July 1988, created the pertinent debt almost a month after the Final Judgment was entered. Therefore, as the government concedes, Capuano's charging lien is clearly "first in time and first in right" over the federal tax lien.

### I.R.C. Section 6323(b)

The government, however, argues that according to I.R.C. sec. 6323(b)(8) (1988), the right of the IRS, to set-off the tax liability of a delinquent taxpayer with the amount of judgment rendered against the United States, is superior to the attorney lien, irrespective of the general rule of "first in time, first in right." Again, we would be required to stand the statute on its head to agree with this position, which is not supported by the text of the statutory provisions. The purpose of section 6323(b) is to assist, with a "superpriority," certain interests whose lien is actually later in time than filing of the federal tax lien.[23] A purpose of section 6323(b)(8) is to give a superpriority to attorney compensation based on a lien which becomes choate *under local law,* "even though notice has been filed" of the federal lien. The provision with respect to *judgments against the United States* is an *exception* to the provisions which come into play even though notice of a federal tax lien has been filed. By those clear provisions of the statute, its purpose is to strike the validity of a tax lien, with respect to the described judgment under local law, even though notice of the tax lien has been filed. In this case, even though the judgment was against the United States, the notice of lien had *not* been filed, and therefore neither the basic purpose of the statute nor its exception is invoked. Although Capuano's lien was in fact based on a judgment against the United States, it was choate under local law *before* the federal tax lien was filed. Hence, section 6323(b) does not come into play, the general rule of "first in time, first in right" applies, Capuano's attorney lien in fact primes the federal tax lien, and, consequently, Capuano has the priority interest in the $25,000 in question.

### Conclusion

The ability of the sovereign to collect the taxes owed to it is, and should be, extremely powerful. For that reason, such power

---

**22.** *Daniel Mones, P.A. v. Smith,* 486 So.2d 559, 561 (Fla.1986).

**23.** 26 U.S.C. § 6323(b) reads as follows:
Even though notice of a [federal tax lien] has been filed, such lien shall not be valid—
(8) **Attorneys' liens**
  With respect to a judgment or other amount in settlement of a claim or of a cause of action, as against an attorney who, under local law, holds a lien upon or a contract enforceable against such judgment or amount,

to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement, *except* that this paragraph shall not apply to any judgment or amount in settlement of a claim or of a cause of action against the United States to the extent that the United States offsets such judgment or amount against any liability of the taxpayer to the United States. (italicized emphasis added).

should be exercised not only forcefully, but clearly and pursuant to the prescribed procedures which enable all interested parties to assert and protect their interests. Especially where parties other than the taxpayer and the tax collector are involved, all parties must proceed according to the same rules, and must be bound by the procedures they follow according to those rules. No party should be able to invoke other rules in the middle of the action.

Because the IRS obtained the money in question from the U.S. Marshal by availing the process of levy, the district court had jurisdiction to entertain a wrongful levy action. We conclude that the undisputed facts show that Capuano had an attorney's lien under Florida law which primed the federal tax lien which arose at the time of the 7 July 1988 jeopardy assessment. Irrespective of the IRS's assessment of income taxes against Santana, Capuano is first due his $25,000 attorney fee because of the priority of his lien. We share the district court's expressed puzzlement at how the IRS could negotiate the check without appellant's consent, but we find it unnecessary to address that issue. The summary judgment is REVERSED and judgment shall be entered in favor of appellant.