## UNITED STATES COURT OF APPEALS
**Filed 12/20/96**
## TENTH CIRCUIT

---

EWING E. LYLE, on behalf of himself and all others similarly situated,

    Plaintiff-Appellant,

v.

COMMODITY CREDIT CORPORATION; DANIEL R. GLICKMAN, Secretary, United States Department of Agriculture; TIM PETERSON, member of the State Committee, Consolidated Farm Service Agency; MARIELLAN APPLEBY, member of the State Committee, Consolidated Farm Service; ROBIN LEACH, Chairman and member of the State Committee, Consolidated Farm Service Agency; ADRIAN POLANSKY, State Director, Consolidated Farm Service Agency; GRANT BUNTROCK, National Administrator, Consolidated Farm Service Agency,

    Defendants-Appellees.

No. 95-3348
(D.C. No. 93-1257-FGT)
(D. Kansas)

---

## ORDER AND JUDGMENT[*]

---

Before **BRORBY, EBEL** and **HENRY**, Circuit Judges.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

Plaintiff Ewing E. Lyle sued Defendant Commodity Credit Corporation,[1] alleging the Commodity Credit Corporation's payment of funds it owed Mr. Lyle to the Internal Revenue Service was not proper either as a levy or as an administrative offset.  The district court granted the Commodity Credit Corporation's motion to dismiss for failure to state a claim upon which relief could be granted, and Mr. Lyle appeals.  Reviewing de novo the district court's dismissal for failure to state a claim, *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir. 1995), we affirm the holding of the district court.

The Commodity Credit Corporation is a wholly-owned government corporation within the United States Department of Agriculture.  7 C.F.R. § 780.3 (1995).  It administers the Department's price support programs, making payments to participating farmers through the Agriculture Stabilization and Conservation Service.  On March 15,

---

[1]  Mr. Lyle also sued a number of individual officials of both the federal government and the state of Kansas.  Mr. Lyle sued these persons in their official capacities, not as individuals.  For ease of reference, the Defendants are collectively referred to as "the Commodity Credit Corporation."

1993, Mr. Lyle's wife applied for Mr. Lyle to receive price support payments.  On April 30, 1993, Mr. Lyle entered into two contracts with the Commodity Credit Corporation to participate in the 1993 Price Support and Production Adjustment programs.

On March 11, 1993, the Internal Revenue Service sent the Agriculture Stabilization and Conservation Service a Notice of Levy indicating Mr. Lyle owed the United States government $26,233.36 in back taxes, interest, and penalties.  Pursuant to that notice, in April and June of 1993, the Agriculture Stabilization and Conservation Service sent the Internal Revenue Service $14,252.94 which it otherwise would have paid to Mr. Lyle pursuant to the March application and the April contracts.

Mr. Lyle argued to the district court that the Commodity Credit Corporation's payment of those funds to the Internal Revenue Service, rather than to himself, was improper for two alternative reasons.  First, if the payment was an administrative offset,[2] he alleged it was improper because the Commodity Credit Corporation failed to comply with the Debt Collection Act's requirements for administrative offset, set forth in 31

---

[2] In an administrative offset (sometimes referred to as a set-off), the government applies money owed to an individual by one government agency to reduce that person's debt to another agency.  *See United States v. Munsey Trust Co.*, 332 U.S. 234 (1947); *United States v. Warren Corp.*, 805 F.2d 449, 451 (1st Cir. 1986).

U.S.C. § 3716 (1994). Alternatively, he contended the payment was not proper as a levy,[3] because at the time the Notice of Levy was filed, Mr. Lyle did not have any property in the hands of the Commodity Credit Corporation. *See* 26 U.S.C. § 6331(b) (1994) (limiting the Internal Revenue Service's power to levy to property possessed and obligations existing at the time of the levy).

The district court correctly held Mr. Lyle's claim of improper offset to be meritless, because 31 U.S.C. § 3716 is inapplicable to debts under the Internal Revenue Code. 31 U.S.C. § 3701(d) (1994). It also found the Commodity Credit Corporation's payment to the Internal Revenue Service to have been pursuant to administrative offset, rather than levy, and accordingly held Mr. Lyle's wrongful levy claim failed to state a claim for which relief could be granted.

On appeal, Mr. Lyle contends the Commodity Credit Corporation's payment to the Internal Revenue Service was pursuant to levy, rather than offset, and therefore claims his suit has merit as an action for improper levy.[4] We, however, find the transaction between the Commodity Credit Corporation and the Internal Revenue Service to have been

---

[3] A levy generally involves the government seizing a taxpayer's property to reduce the taxpayer's outstanding tax liability. *See* 26 U.S.C. § 6331 (1994).

[4] Although Mr. Lyle raises additional issues, our holding with respect to the stated issue renders discussion of those other issues unnecessary.

pursuant to offset, rather than levy. Accordingly, we affirm the district court's dismissal

of Mr. Lyle's action for failure to state a claim upon which relief can be granted.

> The district court relied on 7 C.F.R. § 1403.7(m)(4), which in 1995 provided:
>
> Offset shall be made, if the Internal Revenue Service so requests or has served a Notice of Levy, of any amounts for which the assignor is indebted to the United States for taxes, for which a notice of lien was filed in accordance with the provisions of the Internal Revenue Code prior to the date the notice of assignment was accepted by [the Commodity Credit Corporation] or [the Agriculture Stabilization and Conservation Service].

This regulation was premised on a long-standing policy of the Commodity Credit

Corporation to treat Internal Revenue Service Notices of Levy the same as requests for

administrative offset from other federal agencies. *See* 60 Fed. Reg. 43705, 43706 (1995).

The district court held this regulation authorized the Commodity Credit Corporation to

treat the Internal Revenue Service Notice of Levy as an offset request, and accordingly

found the questioned transaction to have been an offset.[5] We find the regulation's

applicability to the instant situation somewhat ambiguous, and thus utilize different

reasoning than the district court, although we reach the same result. *See Swoboda v.

Dubach*, 992 F.2d 286, 291 (10th Cir. 1993) (appellate court can affirm the district court's

judgment for reasons other than those relied on by the district court).

---

[5] The department of Agriculture has since ceased treating Internal Revenue Service Notices of Levy as offset requests, instead honoring them only in accordance with Internal Revenue Service statutes and regulations, and revised 7 C.F.R. § 1403.7 accordingly. 60 Fed. Reg. 43705, 43706 (1995); *see also* 7 C.F.R. § 1403.7 (1996).

Mr. Lyle argues the Commodity Credit Corporation lacks the power to engage in an offset in response to the receipt of an Internal Revenue Service Notice of Levy. He is incorrect. The Notice of Levy served to inform the Commodity Credit Corporation that Mr. Lyle owed the Internal Revenue Service $26,233.36. It is indisputable that the government possesses the common-law right to offset "debts owed by one agency against claims that another agency has against a single debtor." *In re Turner*, 84 F.3d 1294, 1296 (10th Cir. 1996) (en banc); *see also Munsey Trust*, 332 U.S. 234; *Cherry Cotton Mills, Inc. v. United States*, 327 U.S. 536 (1946). Therefore, upon being notified of Mr. Lyle's outstanding debt to the Internal Revenue Service, the Commodity Credit Corporation had the common-law right to offset funds it owed Mr. Lyle against Mr. Lyle's debt to the Internal Revenue Service. This is exactly what the Commodity Credit Corporation chose to do.

Mr. Lyle's argument that a levy would not, and could not, have reached the Commodity Credit Corporation's obligations to him because those obligations were nonexistent at the time of the levy supports our conclusion. The Commodity Credit Corporation could not have legally paid the funds in question to the Internal Revenue Service pursuant to levy, *see* 26 U.S.C. § 6331(b), yet they could have done so as an offset. Because the Commodity Credit Corporation did pay the funds to the Internal Revenue Service, they necessarily did so as an offset. Although this reasoning in and of

itself might be insufficient upon which to base our holding, it does provide additional

support.


Our holding is further supported by the analogous case of *Warren*, 805 F.2d 449.

In *Warren*, the Internal Revenue Service issued the United States Army three successive

Notices of Levy against the Warren Corporation, which the Army had hired to perform a

construction project. *Id.* at 450-51. The Army, instead of paying the Warren

Corporation, sent the payment to the Internal Revenue Service. *Id.* at 451. In response to

a wrongful levy action instituted by a third party, the government contended the court was

without jurisdiction to hear the case because the transaction was an offset, rather than

pursuant to levy.[6] *Id.* The First Circuit agreed. *Id.* at 452-53. It stated:

> a government agency's transfer to the [Internal Revenue Service] of funds
> owed to a delinquent taxpayer should properly be characterized as a set off
> by the federal government even if the transfer occurs pursuant to a formal
> notice of levy. *To hold otherwise would place undue significance on the
> type of form used by the* [*Internal Revenue Service*] *to notify the other
> agency of the taxpayer's delinquency.* Accordingly, despite the three
> notices of levy issued by the [Internal Revenue Service], we find that the
> Government in the case at bar has simply asserted its well established right
> to set off an unpaid earned contract balance against the unpaid tax liability

---

[6] For a plaintiff to maintain an action against the United States, the government must waive its sovereign immunity. *Tew v. United States*, 86 F.3d 1003, 1004 (10th Cir. 1996). In *Warren*, the plaintiff premised jurisdiction on 26 U.S.C. § 7426(a)(1) (1994), which permits interested parties to bring wrongful levy actions against the United States in district court. *Warren*, 805 F.2d at 451. Thus, if no levy occurred, jurisdiction was lacking.

of a government contractor.

*Id.* (emphasis added).


We believe the First Circuit's reasoning to be equally applicable to this case. However, we limit our holding to the facts of this case, noting there may be situations where the Internal Revenue Service must proceed by forceful levy, rather than offset. *Capuano v. United States*, 955 F.2d 1427 (11th Cir. 1992), is illustrative. In *Capuano*, the United States Attorney's Office had agreed to pay Mr. Agustin Santana $100,000 in settlement of a forfeiture action. *Id.* at 1428. The negotiaters agreed the settlement was to be by a check made payable jointly to Mr. Santana and his attorney, Mr. Capuano, in recognition of Mr. Capuano's right to $25,000 of the settlement in compensation for his services. *Id.* The Internal Revenue Service, to which Mr. Santana owed substantial back taxes, issued a Notice of Levy to the United States Marshal's Office, which was to disburse the settlement check. *Id.* at 1428-29. The Marshal's Office made the check out to Messrs. Santana and Capuano, *and the Internal Revenue Service*, and gave the check to the IRS. *Id.* at 1429. Promptly cashing the check, the Internal Revenue Service credited the full $100,000 against Mr. Santana's debt. *Id.* In response to Mr. Capuano's suit for wrongful levy, the government contended the court lacked jurisdiction because an offset had occurred, as opposed to a levy. *Id.* at 1430.

`      The Eleventh Circuit, refusing to follow *Warren in the "particular circumstances"* *presented*, *id.* at 1430-31(emphasis added), held the Internal Revenue Service had levied upon the funds at issue, rather than engaging in an offset. *Id.* at 1432. In so holding, it found highly significant the interest of Mr. Capuano, who owed no debts to the Internal Revenue Service, in the settlement funds. *Id.* at 1431. The court stated that "[a]lthough the [Internal Revenue Service] is permitted to offset 'moneys of the debtor,' it is not permitted to offset just anyone's money." *Id.* Accordingly, it held that only through "the forceful process of levy" could the Internal Revenue Service access the settlement check. *Id.* In the instant case, however, no such circumstances are present.

We decline to follow the other circuit cases Mr. Lyle cites in support of his levy argument. The first, *Arford v. United States*, 934 F.2d 229 (9th Cir. 1991), is less cogent than *Warren*, and the second, *United Sand & Gravel Contractors, Inc. v. United States*, 624 F.2d 733 (5th Cir. 1980), is distinguishable from the instant case. In *Arford*, the government attempted to avoid a wrongful levy action by claiming it had offset the plaintiff's tax debt against his Air Force retirement pay, rather than levying upon his retirement pay. 934 F.2d at 231, 233. Refusing to allow the government to characterize the transaction as an offset, the court, quoting 26 U.S.C. § 6331 (1988) (authorizing the Internal Revenue Service to levy upon property of delinquent taxpayers), held the statute's language "expresses Congress's intent that inter-agency transfers of money to satisfy tax

-9-

debts be subject to the same requirements as transfers of money from nongovernmental entities to the [Internal Revenue Service]." *Id.* at 233. Thus, in effect the court held 26 U.S.C. § 6331 *mandates* the Internal Revenue Service proceed in such a case through levy, barring use of offset. We do not so read the statute. Rather, although the statute empowers the Internal Revenue Service to collect delinquent taxes through levy, nowhere does it indicate a Congressional intent to simultaneously strip the Internal Revenue Service of its common-law right to offset. *See Munsey Trust*, 332 U.S. at 239 ("The government has the same right 'which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him'") (quoting *Gratiot v. United States*, 40 U.S. 336, 370 (1841)). Indeed, it would make little sense for Congress, in enlarging the Internal Revenue Service's power to obtain delinquent taxes, to eliminate a right all other creditors possess. Accordingly, we read the statute as simply granting the Internal Revenue Service the authority to levy, not restricting its power to offset.

The *Arford* court also took issue with the *Warren* court's reliance upon 26 C.F.R. § 301.7426-1(a)(1). *Arford*, 934 F.2d at 233. That regulation, at the time of both decisions, stated:

> No action is permitted under section 7426(a)(1) [for wrongful levy] unless there has been a levy upon the property claimed. For example, no cause of action arises under this section *where the United States sets-off an amount due to the taxpayer against taxes owed by him since no levy has been made*.

26 C.F.R. § 301.7426-1(a)(1) (1986, 1991) (emphasis added). Although the *Warren* court interpreted this regulation as supporting its holding, the *Arford* court believed it uninstructive, referring strictly to "set-offs *within* the [Internal Revenue Service]--an *intra*-agency transfer of funds, not an *inter*-agency transfer." *Arford*, 934 F.2d at 233 (emphasis in original). Though at the time of each court's decision both interpretations were rational, the Internal Revenue Service has since modified the regulation, and it now clearly references inter-agency offsets, thus supporting *Warren*.[7] *See Pope v. Shalala*, 998 F.2d 473, 483 (7th Cir. 1993) (clarifying regulations do not change the law, but rather restate what the law according to the agency is and has always been) (citing *Manhattan Gen. Equip. Co. v. Commissioner*, 297 U.S. 129, 135 (1936)).

We also find fault with the *Arford* court's final rationale. The court stated that if the plaintiff had worked for a private company and had been receiving retirement pay from that company rather than the federal government, the Internal Revenue Service

---

[7] The regulation now provides:

*Debt owed by another Federal agency.* Section 7426 and this paragraph (a) [both dealing with actions for wrongful levy] apply when a levy is made by the Internal Revenue Service on a debt owed to a taxpayer by another Federal agency. By contrast, section 7426 and this paragraph (a) do not apply if the Internal Revenue Service requests payment from another Federal agency pursuant to a request for setoff.

26 C.F.R. § 301.7426-1(a)(1)(ii) (1996).

would only have been able to access the retirement benefits through levy.  *See Arford*, 934 F.2d at 233-34.  Therefore, it reasoned, the government should not be able to avoid the formal requirements of the levy process "merely because [the plaintiff] worked for a branch of the government rather than a private company."  *See id.* at 234.  We find this reasoning unconvincing, and somewhat irrelevant.  The court's first assertion may be true, because the government would not be both creditor and debtor, but in such a senario the private company would be able to offset the retirement pay against any debts the former employee owed the company.[8]  Like the Supreme Court in *Munsey Trust*, 332 U.S. at 239, we see no reason to bar the government from a right possessed by all other creditors.

Finally, we find *United Sand* distinguishable.  In that case, the non-government plaintiff argued that *any action* by the Internal Revenue Service upon property of a tax delinquent in the hands of another federal agency was *necessarily* an offset, even if it followed all the formalities of a levy.  *United Sand*, 624 F.2d at 736.  The court refused to accept the plaintiff's contention, holding the Internal Revenue Service could, and did, proceed through levy.  *Id.* at 736-37.  However, that holding is not the same as holding the Internal Revenue Service could *only* proceed through levy, and the court did not so hold.  Accordingly, *United Sand* does not remove the option of offset, and is not contrary to our holding in the instant case.

---

[8]  We do not concern ourselves at this time with any possible problems such actions could present under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (1994).

Because we find the transaction between the Commodity Credit Corporation and the Internal Revenue Service was an offset, we **AFFIRM** the holding of the district court.

**Entered for the Court:**

**WADE BRORBY**
United States Circuit Judge