**HILL, CHRISTOPHER AND PHILLIPS, P. C., et al., Plaintiffs,**

v.

**UNITED STATES POSTAL SERVICE, et al., Defendants.**

**Civ. A. No. 79–3228.**

United States District Court, District of Columbia.

Jan. 15, 1982.

Richard E. Schwartz, Collier, Shannon, Rill & Scott, Washington, D. C., for plaintiffs.

John J. McCarthy, Edward J. Snyder, Paige E. Reffe, Tax Div., Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

SIRICA, District Judge.

This matter is before the Court on the plaintiffs' motion for summary judgment and the defendants' motion to dismiss on grounds, among others, of failure to state a claim upon which relief can be granted. The underlying cause of action has been brought for monetary and declaratory relief arising from a controversy over the priority of liens.

The plaintiff, Hill, Christopher and Phillips, P. C. (Hill), is a law firm which was retained by a company known as Unidex Systems Corporation (Unidex), which is not a party to this action, to pursue a number of claims by Unidex against the United States Postal Service (Postal Service) before the Postal Service Board of Contract Appeals. Those claims arise from contracts performed by Unidex for the Postal Service during 1970 and 1971.

The plaintiff Hill represented Unidex under a contingent fee agreement which provided that it would receive one-third of any monies recovered on these claims in addition to the expenses of litigation. Unidex has been awarded $35,533.04 in partial resolution of its claims, of which amount, the plaintiff claims entitlement to a fee of $12,-542.75, representing one-third of the award plus $698.40 in expenses. This amount is not in dispute. In addition, a second law firm, the plaintiff Collier, Shannon, Rill & Scott (Collier) has indicated that it intends to pursue appeals of the remaining claims on behalf of Unidex, which have been denied, should the plaintiffs prevail in the instant action.

Prior to these awards being made to Unidex, the company had received tax assessments for its failure to pay employment taxes due the Internal Revenue Service in amounts initially totaling $239,250.76. Unidex has been unable subsequently to satisfy these assessments due to the fact that it has effectively ceased business operations and is without financial resources other than its claims against the Postal Service. Accordingly, pursuant to Internal Revenue Code § 6321,[1] tax liens in favor of the United States have arisen on the unpaid amount of those tax assessments against Unidex.

In addition, in accordance with Internal Revenue Code § 6672,[2] a penalty has been assessed against an officer of Unidex in an amount equal to the remaining unpaid employment taxes which resulted from the failure of Unidex to collect and pay them over to the Internal Revenue Service (IRS). It is important to note, however, that while important for purposes of background, the penalty assessment, the tax assessments, the amount of the attorney's fees, and the claims of Unidex against the Postal Service are not presently issues before the Court for determination.

Instead, the issue before the Court is simply one of lien priority. It arises from the fact that the tax assessments against Unidex have been partially satisfied by the Postal Service and IRS offsetting the amounts awarded Unidex on its Postal Service claims against its outstanding tax liability. In offsetting the funds awarded Unidex from the Postal Service, the IRS did not recognize the priority of Hill's attorney's lien and so did not set aside and pay

1. 26 U.S.C. § 6321 (1976). That section provides:

   If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

2. 26 U.S.C. § 6672 (Supp.III 1979). That section provides in pertinent part:

   (a) General rule.—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

over a part of the award to Hill as its attorney's fee. Moreover, the IRS has indicated that attorney's fees will not be paid out of any future awards in favor of Unidex against the Postal Service as a result of the representation of Collier. Instead, any amounts will presumably only be offset by the IRS in satisfaction of the tax liability of Unidex.

Hill and Collier have responded by bringing this action to enforce the attorney's lien and challenge the propriety of the actions of the Postal Service and the IRS. In defense of their position, the Postal Service and the IRS maintain (1) that those tax liens asserted against Unidex by the IRS pursuant to 26 U.S.C. § 6321 take precedence over any lien for attorney's fees asserted by Hill or Collier in their capacity as counsel for Unidex in any of its claims against the Postal Service; and (2) that the liability of the Postal Service may be offset without regard to attorneys' liens so long as Unidex has an outstanding tax liability.

The validity and priority of a tax lien arising under 26 U.S.C. § 6321 as it relates to attorneys' liens is governed by the provisions of Internal Revenue Code § 6323(b)(8).[3] That section provides that a tax lien shall *not* be valid

> [w]ith respect to a judgment or other amount in settlement of a claim or of a cause of action, as against an attorney who, under local law, holds a lien upon a contract enforceable against such judgment or amount, the extent of his reasonable compensation for obtaining such judgment or procuring such settlement, *except* that this paragraph shall not apply to any judgment or amount in settlement of a claim or of a cause of action against the United States to the extent that the United States offsets such judgment or amount against any liability of the taxpayer to the United States. (emphasis added)

3. 26 U.S.C. § 6323(b)(8) (1976).

4. Pub.L.No.89–719, 80 Stat. 1125 (1966).

In view of this statutory provision, it is apparent that the plaintiffs' attorneys' liens will take priority over the tax liens *unless* the exception set forth in the statute applies. That exception, according to the statute, applies only to judgments secured against the "United States." With this in mind, the plaintiffs have asserted that the exception does not apply here, arguing that the judgments they obtained were against the United States Postal Service, which should not be considered to be an entity within the scope of the term "United States" as used in the statute.

The Court cannot agree. Inasmuch as 26 U.S.C. § 6323(b)(8) is the operative statute, the Court's analysis should begin there. That particular section of the Code was added with the enactment of the Federal Tax Lien Act of 1966.[4] While the language of the Act itself does not speak to the scope to be accorded to the term "United States" as used therein, the legislative history, as reflected in the House and Senate Reports accompanying H.R.11256, the bill which became the Federal Tax Lien Act,[5] does provide some insight. More specifically, these reports, by way of explanation, state that:

> [U]nder the bill, in a proceeding against the *Government*, the *Government* retains its right to set off against any recoveries from it any amounts due it by the taxpayer on account of any tax or any other debt or claim. This setoff means that the attorney's lien "superiority" does not apply with respect to judgments he obtains for the taxpayer against the *Government*. (emphasis added)

Thus it appears that the legislative history of the Federal Tax Lien Act equates the United States with the broad concept of "the Government." Moreover, as there is no limiting language elsewhere in the Act or its legislative history, it should be assumed that "the Government" includes all those agencies and instrumentalities through which "the Government" functions.

5. S.Rep.No.1708, 89th Cong., 2d Sess. 6 (1966); H.R.Rep.No.1884, 89th Cong. 2d Sess. 6 (1966), U.S.Code Cong. & Admin.News 1966, p. 3722.

This language in the operative statute assumes added significance for the purposes of analysis when read in light of the subsequently enacted Postal Reorganization Act (Postal Act) [6] codified as Title 39 of the United States Code, which established and governs the United States Postal Service in its present form. Three sections of the Postal Act are particularly important in this regard. The first of these is section 101,[7] which sets forth the policy which is to govern the Postal Service, providing in pertinent part that:

> The United States Postal Service shall be operated as a basic and fundamental service *provided* to the people *by the Government of the United States*, authorized by the Constitution, created by Act of Congress, and supported by the people. (emphasis added)

This section is followed by section 102 of the Postal Act,[8] which defines the Postal Service as "the United States Postal Service established by section 201 of this title." Looking then to section 201, the last of the three sections, it provides that:

> There is established, as an independent establishment of the executive branch of the *Government of the United States*, the United States Postal Service. (emphasis added)

The only conclusion which can be drawn from these sections of the Postal Act, particularly when they are read in conjunction with one another, is that the Postal Service is an entity of the United States Government and that the services it provides are indeed services provided by the Government of the United States. Implicit support for this conclusion is found elsewhere in the Postal Act in the language of a number of its other provisions. For example, section 101(c) of the Act,[9] requires the Postal Service to emphasize career advancement opportunities for its employees and "the achievement of worthwhile and satisfying careers in the service of the United States." Similarly, section 205(d) [10] permits a governor of the Postal Service to accept outside employment not inconsistent with his duties and powers as "an officer of the Government of the United States in the Postal Service."

The Court's interpretation of the Federal Tax Lien Act in light of the Postal Act must be based upon an analysis which treats the two pieces of legislation in the most consistent and harmonious manner. Inasmuch as the Postal Act explicitly and implicitly recognizes the Postal Service as an entity of the Government, and the legislative history of the Federal Tax Lien Act equates the Government with the United States, the preferred interpretation in this instance is one which views the Postal Service as falling within the scope of the term "United States" as used in the Federal Tax Lien Act.[11]

The plaintiffs suggest, however, that this interpretation will not only lead to an inequitable result, but will be inconsistent with the purposes of both the Postal Act and the Federal Tax Lien Act. The Court does not agree.

In addressing the equities of the situation, the plaintiffs argue that Unidex's only asset is its claims against the Postal Service, and unless it can hold out the prospect of lien priority as an inducement to attorneys to pursue those claims on its behalf, then it will be unable to secure legal representation. This inability, the plaintiffs argue, will only serve to bestow an unwarranted windfall on the Postal Service at the expense of Unidex and, ultimately, the Treasury.

The plaintiff's equitable arguments on behalf of Unidex are unpersuasive, however, for several reasons. To begin with,

---

6. Pub.L.No.91–375, 84 Stat. 719 (1970).

7. 39 U.S.C. § 101 (1976).

8. 39 U.S.C. § 102 (1976).

9. 39 U.S.C. § 101(c) (1976).

10. 39 U.S.C. § 205(d) (1976).

11. It is also interesting to note that the IRS and the Postal Service as the Governmental entities principally affected by this interpretation, concur in it.

while the plaintiff Hill purports to advance the equitable interests of Unidex, it is apparent that the interests of Unidex and Hill are actually at odds with regard to the monies *already* awarded on the postal claims. That is because Hill's attorney's fee would have to come from the funds which are being supplied by the Government to satisfy the tax liability of Unidex. Therefore, recognition of the priority of attorneys' liens, at least with respect to those claims already awarded, will be beneficial only to Hill, not Unidex.

■ Moreover, the language and legislative history of the Federal Tax Lien Act indicate that neither the attorney nor the client was intended by Congress to be a principal beneficiary of the enactment of section (b)(8), which is the operative statutory provision for purposes of this litigation.[12] Section (b)(8) grants priority to attorneys' liens over tax liens, except in instances where the judgment is against the Government in favor of an individual who has an outstanding tax liability. At first glance, this may make the section appear to be intended primarily for the benefit of attorneys. However, a closer analysis reveals that the principal purpose of section (b)(8) is to assist the Government in its tax collection efforts. Insofar as it protects the attorney's lien, it does so only to encourage the attorney to pursue and obtain judgments which will render the client better able to pay his taxes. This is evidenced by the fact that the attorney receives no protective consideration for his efforts on behalf of a client with a tax liability, if the funds to satisfy that liability are going to come from a judgment against the Government. The same result can be obtained by simply offsetting the liabilities of the taxpayer and the Government. Simply put, an attorney is not given a share of the judgment when he merely takes money out of one of the Government's pockets so it can be put back in another.

Thus, it follows that the benefit conferred upon the attorney through lien priority is but a means to the end of assisting the Government in its tax collection. As that benefit gives way when it is unnecessary to effectuate the tax collection process, it must be considered subservient to the Government's interest in the collection of taxes, which emerges as the principal purpose of the section.

A review of the legislative history of 26 U.S.C. § 6323(b)(8) supports this conclusion. As previously stated, that particular provision was added by the Federal Tax Lien Act of 1966.[13] The Act was introduced in the House of Representatives by Representative Mills, Chairman of the Ways and Means Committee as H.R.11256.[14] During the debate in the House of Representatives concerning H.R.11256, Representative Mills commented specifically on the purpose of the new provisions dealing with attorneys' liens. In particular, he stated:

> If the Government is trying to collect some delinquent taxes from an individual and this individual may possibly collect a judgment from *someone else*, is it not desirable from the standpoint of the Government that he have a good attorney so that he can collect the judgment? To get a good attorney would he not have to be able to pay the attorney a reasonable fee? (emphasis added) [15]

Comments of a similar nature were offered in both the Senate and House Committee Reports accompanying the bill. They noted that:

> It is believed that attorneys whose efforts result in obtaining or collecting judgments or settlements should be protected as to their reasonable fees to the extent that the fees are protected under local law. The attorney's fee in such a case can be thought of as similar in concept to the repairman's charge in that it can be expected to enhance the value of the taxpayer's property. Moreover, as in the case of a possessory lien, the efforts of

---

**12.** 26 U.S.C. § 6323(b)(8), quoted *supra* in text.

**13.** *See* note 4, *supra*.

**14.** 111 Cong.Rec. 25098 (1965).

**15.** 112 Cong.Rec. 22226 (1966).

the attorney may account for the realization of value by the taxpayer from the judgment or settlement.[16]

Thus, the attorneys' fees provision emerges as a simple matter of good business sense on the part of the Government. The attorney's lien is not an end unto itself. Instead, as with a mechanic's lien, it is intended to add to the value of the taxpayer's property and increase the Government's chances of tax collection.[17]

In light of this, the Court must proceed with its analysis of the parties' claims mindful of the fact that the principal purpose of section (b)(8) is to benefit the Government. Furthermore, it must be remembered that the purpose is a practical one aimed at furthering tax collection by the Internal Revenue Service (IRS) on behalf of the Government. No doubt this was one of the reasons why the IRS supported the passage of the bill, H.R.11256.[18]

The Court looks next to the equitable arguments advanced by the plaintiff *Collier* on behalf of Unidex and finds that they are also unpersuasive. As the plaintiffs themselves have indicated, Unidex is a corporation which is now effectively out-of-business and assessed with a very substantial tax liability. As such, it appears that even the most optimistic prospect of recovery on the postal claims, when diminished by the contemplated one-third attorney's fee of Collier, will not serve to resurrect the corporate entity. On the other hand, despite the dim prospect of breathing new life into the out-of-business corporation, there can be no doubt that recognition of the attorney's lien will further the financial interests of Collier. Therefore, the arguments advanced by Collier might more correctly be viewed as benefiting Collier, itself, rather than the corporate entity of Unidex. With this in mind, it should again be noted that Congress has enacted section (b)(8) for the principal purpose of collecting taxes, not bestowing benefits on attorneys.

■ Even assuming, however, that Unidex has a practical interest in pursuing these claims, the denial of lien priority to Collier will not necessarily deny Unidex legal representation. In this instance, the officer of Unidex originally responsible for the collection of employment taxes, which Unidex failed to pay, now faces a tax liability identical to that of Unidex. A penalty equivalent to the unpaid employment taxes due the IRS from Unidex has been assessed against him, pursuant to the provisions of 26 U.S.C. § 6672.[19] That section provides an alternative assurance to the Government of the collection of employment taxes from companies. It does so through the imposition of this penalty on the responsible corporate officer, which mirrors the tax liability of the corporation resulting from the failure to collect and pay over the employment taxes as required by law. The penalty assessment against the officer can be enforced by the Government until it has collected an amount equal to the payroll tax liability which gave rise to the penalty assessment. However, the Government is entitled to only one recovery, so it must abate the officer's penalty upon satisfaction of the original corporate payroll tax liability. *See Gens v. United States,* 615 F.2d 1335 (Ct.Claims 1980). The penalty is actually to be used only as a collection device. *Id.* at n.7.

Since any monies recovered by Unidex which are applied to its tax liability will reduce the officer's penalty assessment under 26 U.S.C. § 6672 in kind, he is provided with an incentive for assuring that the claims are pursued. Accordingly, an alternative vehicle for assuring legal representation for Unidex on its claims is available. This effectively undercuts the nominal arguments of the plaintiffs regarding the inability of Unidex to pursue its postal claims.

■ Similarly, the argument that the Postal Service will receive a windfall, if the

16. S.Rep.No.1708, 89th Cong., 2d Sess. 6 (1966); H.R.Rep.No.1884, 89th Cong., 2d Sess. 6 (1966), U.S.Code Cong. & Admin.News 1966, p. 3727.

17. *Id.*

18. 112 Cong.Rec. 22210 (1966).

19. *See* note 2, *supra.*

plaintiffs do not prevail, is mitigated by the interest of this corporate official in pursuing recovery of Unidex's postal claims. In addition, the officer's interest suggests that the burden of legal representation may not only fall on a party who will benefit therefrom, but also one who played a role in the failure of Unidex to pay its taxes, a circumstance which gave rise to the present controversy.

Finally, the Court, in assessing the equities, must not lose sight of the actual issue before it for determination, nor the interests which will be affected thereby. In this instance, the issue before the Court is whether it should accept a statutory interpretation of section (b)(8) of the Federal Tax Lien Act which would consider the Postal Service as an entity apart from the United States, thus affording the plaintiffs priority for their liens as attorneys. Considering the import and scope of the determination, the Court has serious reservations about allowing its decision to turn on the equitable interest of an entity such as Unidex, which is not before the Court as a party to this action, and whose legal claims will be litigated in another forum. This is all the more so when one considers that Unidex is in its present dilemma, in large part, as a result of its own shortcomings regarding its statutory payroll tax duties and obligations, thus calling into question whether the Court should even invoke its equitable powers.

As regards the issue of the effect on the collection of taxes of a decision adverse to the plaintiffs, the Court would note three considerations. First, as noted previously, 26 U.S.C. § 6672 already provides an assurance in this instance that the tax liability assessed to Unidex will be satisfied. Second, a ruling favorable to the plaintiffs would not benefit the tax collection process unless the Postal Service is an entity distinct from the United States, and the plaintiffs have not independently demonstrated such a distinction. Third, the IRS, as the governmental entity responsible for the collection of taxes and a principal beneficiary of the Federal Tax Lien Act, has quite obviously opposed giving priority to any

attorneys' liens which might arise in Collier's behalf for services to be rendered to Unidex. Certainly, the IRS must be aware of the long-range implications of its position. That is to say, a decision favorable to the Government will put attorneys on general notice that their fees will not be protected in a successful pursuit of a claim against the Postal Service on behalf of a client who has a tax liability. This can only have a discouraging effect on the pursuit of similar claims in the future. As such, the IRS must see no practical benefit resulting from the encouragement of such claims against the Postal Service in order to secure funds to satisfy taxes due the IRS. This leads the Court to conclude that the IRS must have a good faith belief that there is no practical difference between funds in the possession of the Postal Service and funds in the possession of the rest of the Government. Otherwise, it is difficult to understand why the agency would so readily discard a valuable statutory tool for putting money into the hands of individuals with tax liabilities.

Of course, this practical administrative view of the IRS is not dispositive of the issue before the Court. However, the operative statutory provision for purposes of this litigation is section (b)(8) of the Federal Tax Lien Act, which was intended to serve a practical tax collection function. Since the IRS is charged with the responsibility for the collection of taxes, its experience and expertise suggest that serious consideration should be given to its assessment of practical tax collection benefits. Accordingly, while the Court's decision herein does not turn on the viewpoint set forth by the IRS, the legislative intent that section (b)(8) serve a practical tax collection function indicates that the position of the agency has a definite role to play in the Court's determination.

It has also been argued that a decision adverse to the plaintiffs will be inconsistent with the policy of independence and fiscal responsibility intended for the Postal Service by the Postal Act. Once again, the

Court cannot agree. The Postal Act was enacted by Congress to convert the old Post Office Department into a new Postal Service, "freed from direct political pressures and endowed with the means of building a truly superior mail service." [20] This was to be accomplished by eliminating the serious handicaps which were imposed by legislative, budgetary, financial and personnel policies that were outmoded, unnecessary, and inconsistent with the modern management and business practices necessary to assure an efficient and economical postal service for the American public.[21]

The provisions of the Postal Act, therefore, accorded a considerable degree of independent authority to the Postal Service with respect to its managerial and financial functions. This extended to such areas as entering contracts, settling claims, setting postal rates, raising funds, and constructing, holding, leasing and maintaining property. However, the managerial and financial independence which was granted to the Postal Service by no means mandated that the Postal Service was to be divorced from the United States Government. This is particularly evident in view of the statutory framework provided for the Postal Act by sections 101 and 201, which specifically recognize the Postal Service as an entity of the Government providing governmental services. Congress apparently viewed any independence as qualified, since when it spoke of the independence of the Postal Service, it was at the same time careful to reiterate the status of the Postal Service as an establishment of the Government of the United States.[22]

Similarly, while the operative sections of the Postal Act do provide the Postal Service with financial and managerial independence, the thrust of that independence is tempered by other sections which tie the Postal Service intimately to the rest of the Government. To illustrate, section 401 of the Act [23] permits the Postal Service to be sued and to sue in its own name and settle claims made against it. Yet, at the same time, section 409 of the Act [24] provides for representation of the Postal Service by the Department of Justice and treats the Postal Service as the United States both for purposes of the Federal Tort Claims Act and service of process. Similarly, section 2003 establishes a Postal Service Fund to carry out the purposes, functions and powers of the Postal Service, yet at the same time provides that the fund is to be established within the Treasury of the United States.[25] Section 2005 permits the Postal Service to borrow money and issue obligations,[26] yet section 2006(c) provides that those obligations may be treated as obligations of the Government of the United States.[27]

Qualified as it is by the stated policy of Congress and the operative provisions of the Act, the independent authority granted to the Postal Service is not inconsistent with an interpretation which views the Postal Service as an entity of the United States, nor so sweeping as to require that it not be considered as such an entity.

Moreover, as a practical matter, the managerial and financial independence which the Postal Act has granted to the Postal Service will not be affected by recognition of it as an entity of the United States for purposes of 26 U.S.C. § 6323(b)(8). That is to say, the powers of the Postal Service will not be diminished by such recognition, but instead will remain intact. The Postal Service will continue to exercise its authority to set rates, raise funds, and acquire and dispose of property. As regards agreements such as those made with Unidex, the Postal Service will continue to exercise its authority to enter into such contracts and

20. H.R.Rep.No.1104, 91st Cong., 2d Sess. 1 (1970).

21. Id. at 2.

22. See section 201 quoted in text, supra.

23. 39 U.S.C. § 401 (1976).

24. 39 U.S.C. § 409 (1976).

25. 39 U.S.C. § 2003 (1976).

26. 39 U.S.C. § 2005 (1976).

27. 39 U.S.C. § 2006(c) (1976).

settle claims arising therefrom, irrespective of the outcome of this litigation.

The ability of the Postal Service to conduct its affairs rests with the powers granted by the individual operative provisions of the Postal Act, not whether it is considered an entity of the United States Government for purposes of the Federal Tax Lien Act. Denying the plaintiffs priority for their liens may adversely affect their interests, but it will do no harm to the ability of the Postal Service to carry out its functions as provided under the Postal Act.

■ Finally, the Court concludes that the defendants have the authority to effect the offset of liabilities involved herein. Section (b)(8) clearly contemplates an offset where there is a judgment against the United States and the judgment creditor has a liability as a taxpayer. The legislative history indicates that this provision was intended to *preserve* the Government's right to set-off against *any* recovery from it amounts due by the taxpayer on account of any tax.[28] This presumably would include contractual claims, such as those of Unidex.

That right of offset which the Government retained under the provisions of section (b)(8) was not grounded in a statutory provision. Instead, authority for such a set-off emanates from the right which the Government shares with every other creditor, to apply the unappropriated money of its debtor, in its hands, in expungement of debts due it. *See United States v. Munsey Trust Co.*, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947) cited in H.R.Rep.No.1884, 89th Cong. 2d Sess. 39 (1966); *Malman v. United States*, 202 F.2d 483 (2d Cir.), *reh. denied* 207 F.2d 897 (1953). *See also* the remarks of Representative Mills, 112 Cong. Rec. 22226 (1966) noting that the right of offset exists between two private parties having claims against each other and there is no reason for treating the Government different from a private party.

■ Since the provision under which the plaintiffs are proceeding was intended by Congress to recognize and preserve a right of offset existing independent of statute, absent some subsequent clear congressional mandate to the contrary, the defendants should be permitted to exercise that right of offset. Despite the plaintiffs' arguments, the Court does not believe any clear mandate from Congress to do away with the Government's right of offset is to be found in either the Postal Act or 31 U.S.C. § 227 (1976). The latter provision, enacted prior to section (b)(8) and relating to the duties of the Comptroller General with respect to offsets, is by no means an exclusive offset provision in view of the subsequent congressional reference to the right of offset in section (b)(8).

As with the issue of priority for the plaintiffs' liens, the question of whether the defendants can affect the offset of Unidex's postal awards against its tax liabilities ultimately turns on the issue of whether the Postal Service is to be considered an entity entirely distinct from the United States. For the reasons set forth previously in this opinion, the Court believes that the Postal Service is not an entity separate from the Government of the United States.

Accordingly, the Court concludes that for purposes of 26 U.S.C. § 6323(b)(8), the term "United States" includes the United States Postal Service. As such, no priority can be accorded the attorneys' liens asserted by the plaintiffs and they have failed to state a claim upon which relief can be granted. Therefore, the complaint will be dismissed. An appropriate order accompanies this Memorandum Opinion.

■

**28.** S.Rep.No.1708, 89th Cong., 2d Sess. 6 (1966); H.R.Rep.No.1884, 80th Cong., 2d Sess. 6 (1966).