Michael C. MONTAVON,
et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 94–265–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Oct. 11, 1994.

Richard A. Lash, Buonassissi, Henning, Campbell & Moffet, David Leo Duff, Law Offices of David L. Duff, PC, Fairfax, VA, for plaintiffs.

Gerard J. Mene, U.S. Dept. of Justice, Tax Div., Washington, DC, Dennis E. Szybala, Asst. U.S. Atty., Alexandria, VA, for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

This is a contest of liens, an attorney's lien for services rendered in winning an attorney's fee award against the General Services Administration (GSA), versus an IRS lien on the award based on taxes owed by the attorney's client, the recipient of the award. Ordinarily, the IRS tax lien would prevail, as it is the first in time. Congress, however, has set aside the first in time rule for certain attorney's liens, granting them "superpriority" over prior tax liens.[1] An exception to superpriority exists when the attorney's lien rests on a judgment rendered against the United States, in which case the United States may avoid paying the judgment by offsetting the amount payable against the tax liability of the attorney's client. 26 U.S.C. § 6323(b)(8). At issue here is whether this exception applies when the IRS acts to offset the judgment and the taxes owed by means of one particular tax collection device, a levy, rather than another, a setoff.

The matter is before the Court on cross motions for summary judgment. The only factual matter in dispute—the terms of plaintiff's agreement with his client concerning his compensation for the fee award litigation—is immaterial unless plaintiff's lien is superior to that of the IRS. Given this, and because the parties have had ample opportunity to address the issues, the matter is now ripe for disposition. For the reasons stated herein, summary judgment is granted for the defendant, the United States.

---

1. Where several liens have attached to one fund, the lien that is "first in time" will generally have priority, that is, it must be satisfied before recovery may occur under subsequent liens. *See infra* notes 9–10 and accompanying text. Under 26 U.S.C. § 6323(b), certain liens enjoy "superpriority" over federal tax liens, meaning they must be satisfied first, regardless of the "first in time" principle. *Air Power, Inc. v. United States,* 741 F.2d 53, 55 n. 1 (4th Cir.1984).

## I

In 1985, Spectrum Leasing Corporation ("Spectrum") had six contract claims against GSA pending before the GSA Board of Contract Appeals ("the Board"). Plaintiff, Michael C. Montavon, is a Virginia attorney who agreed to represent Spectrum on the claims.[2] A written fee contract dated June 25, 1985 memorialized this agreement. It provided that Montavon would receive a flat fee of $25,000 plus twenty percent of "all amounts collected as a result of these matters, whether by settlement, hearing, judgment or otherwise." The agreement specified that the contingency fee provision applied only to "the services described in this paragraph," namely the six contract claims pending before the Board. In the event of an appeal of those claims, the agreement stated the parties would "endeavor to reach a new agreement." The agreement also provided that Montavon would bill Spectrum at his normal hourly rates for all services other than the handling of the six contract claims.

From March 1989 to April 1990, while Spectrum was pursuing its GSA claims, the IRS assessed tax deficiencies against Spectrum totalling approximately $280,000. In May 1990, the Board found in Spectrum's favor on the contract claims without determining the amount of GSA's liability. At the Board's direction, Spectrum and GSA began negotiating to settle all claims. Soon after the Board's decision, Montavon commenced an action on behalf of Spectrum for an award of attorneys' fees under the Equal Access to Justice Act, 5 U.S.C. § 504 ("EAJA"). Montavon and Spectrum's officers, Michael Wueste and Linda J. Wueste,[3] now disagree about what compensation Montavon was to receive in connection with prosecuting the EAJA claim. Montavon contends that he discussed the matter with the Wuestes prior

to instituting the action, and that all agreed he would receive twenty percent of any recovery of legal fees pursuant to the written fee agreement.[4] The Wuestes, by contrast, deny that either agreed, orally or in writing, to pay Montavon twenty percent of the EAJA award. Instead, they contend that there was no discussion of Montavon's compensation, and that they reasonably assumed the work would be billed to Spectrum on an hourly basis.

As the contract settlement negotiations and the EAJA litigation progressed, the IRS took steps to prevent disbursement of any funds by GSA to Spectrum. Specifically, the IRS filed its Form 4793, entitled "Request for Offset—Government Contracts," on November 18, 1991. This Form informed GSA of Spectrum's outstanding tax liability, and requested that any disbursements to be made to Spectrum be withheld to satisfy that liability. The form specifically pertains only to Spectrum's six contract claims, and does not mention the EAJA litigation or award.

The Board-directed settlement negotiations ultimately bore fruit. In early 1992, Spectrum and GSA agreed to settle the contract claims for approximately $3.9 million. GSA rejected the IRS request via Form 4793 for offset, determining that prior to the tax periods in question, Spectrum had fully performed the contracts and assigned its claims thereunder to its lender, Fidelity Bank, N.A. Montavon received twenty percent of the settlement amount, $779,156, pursuant to his fee agreement with Spectrum.

In July 1992, the Board awarded Spectrum $185,699 in attorney's fees.[5] On September 15, 1992, the IRS sent a notice of levy to GSA. A week later, GSA complied with this

---

2. Michael C. Montavon, P.C., a Virginia professional law corporation, is also a plaintiff in this action. Both plaintiffs are hereafter collectively referred to as "Montavon."

3. Michael Wueste is Spectrum's president and sole owner, and Linda J. Wueste is Spectrum's vice-president.

4. To bolster his view that Spectrum shared his understanding, Montavon points to the fact that

Michael Wueste would later list Montavon as a creditor owed $38,000 in Wueste's personal Chapter 11 bankruptcy proceeding in 1994. This amount represents one-fifth of the fee award.

5. This award reflected fees incurred in litigating the EAJA claim itself, as well as the contract claims.

notice and issued a check to the IRS in the full amount of Spectrum's fee award.[6] Thus, the entire $185,699 was applied in partial satisfaction of the IRS lien against Spectrum.[7]

Montavon commenced the present action in order to recover one-fifth of the EAJA award, to which he claims entitlement under the 1985 fee contract. Cross motions for summary judgment have been filed. Summary judgment, of course, is inappropriate if a genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). And the parties do dispute the nature of the fee agreement between Montavon and Spectrum pertaining to the EAJA claim. Montavon argues that he is entitled to receive twenty percent of the EAJA award, or $37,-189, under the contingent fee provision of the written fee agreement, or alternatively, under an oral contract with the Wuestes. The IRS, taking Spectrum's position on this issue, argues that Spectrum is obligated to pay Montavon only an amount representing time spent on the EAJA litigation billed at his normal hourly rate.[8] Yet, in the final analysis, this disputed factual issue is not material unless Montavon's lien on the EAJA award is superior to the IRS lien. If the IRS lien is superior, then the contract issue is immaterial and the United States is entitled to summary judgment. Analysis thus properly begins with the rules determining the priority of such liens.

## II

■ The United States has a lien under the Internal Revenue Code upon "all property and rights to property" of any person who does not pay taxes due. 26 U.S.C. § 6321.

Federal law governs the priority of that lien as against liens created by state law, according to the principle of "first in time is the first in right." *United States v. City of New Britain,* 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954); *see also Pine Builders, Inc. v. United States,* 413 F.Supp. 77, 80 (E.D.Va.1976). A tax lien arises when the tax is assessed. 26 U.S.C. § 6322.

■ By contrast, an attorney's lien is a creature of state law. Under Virginia law,[9] such a lien comes into existence on the making of the contract of employment between the client and attorney,[10] but then remains inchoate until judgment or recovery is obtained. *See New Britain,* 347 U.S. at 84, 74 S.Ct. at 369–70 (lien becomes choate only when "identity of the lienor, the property subject to the lien, and the amount of the lien are established").

In this case, the tax lien sprang into existence when the IRS made a series of assessments against Spectrum between March 1989 and April 1990. This was long before the Board granted the attorney's fee award in July 1992, at which time the attorney's lien arose. Thus, relative to Montavon's lien, the IRS lien was first in time, and would ordinarily enjoy priority.

■ But the first in time principle is not always controlling. Congress has given "superpriority" to certain categories of liens, including attorneys' liens on judgments, such that they trump a federal tax lien even when they arise and become choate after the tax is assessed. *See* 26 U.S.C. § 6323(b)(8). Specifically, this statute provides that a federal tax lien will not be valid:

> With respect to a judgment or other amount in settlement of a claim or of a cause of action, as against an attorney who, under local law, holds a lien upon or a contract enforceable against such judg-

---

**6.** Notices of levy, IRS Form 668–A, had been previously sent to GSA regarding Spectrum on November 14, 1990 and October 18, 1991.

**7.** By September 1992, with statutory interest and late payment penalties, Spectrum's tax liability had grown to over $440,000.

**8.** The EAJA fee dispute, in the first instance, is between Montavon and Spectrum. But the IRS and Spectrum share the same interest with respect to this dispute inasmuch as the smaller the fee owing to Montavon, the more the IRS collects on the tax liability.

**9.** Virginia law provides, in pertinent part, that: Any person having or claiming a right of action sounding in tort, or for liquidated or unliquidated damages on contract, may contract with any attorney to prosecute the same, and the attorney shall have a lien upon the cause of action as security for his fees for any services rendered in relation to the cause of action or claim.
Va.Code § 54.1–3932.

**10.** *See In re Funk,* 2 F.Supp. 555 (W.D.Va.1932), *aff'd sub nom. Ruebush v. Funk,* 63 F.2d 170 (4th Cir.1933).

ment or amount, to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement....

26 U.S.C. § 6323(b)(8). At first glance, this statute appears solely to benefit attorneys. Yet, a closer look reveals that Congress enacted the statute "as a simple matter of good business sense" for the "principal purpose of collecting taxes, not bestowing benefits on attorneys." *Hill, Christopher & Phillips, P.C. v. United States Postal Service,* 535 F.Supp. 804, 810 (D.D.C.1982). Congress granted attorney's liens superpriority to encourage attorneys to bring suits that may benefit the Treasury.[11] Without superpriority, an attorney would have less incentive to represent a client subject to an unsatisfied tax lien, for even if the client had a valid claim and eventually recovered a judgment, the IRS would take the entire amount under its lien, leaving the attorney with nothing for her efforts. To avoid this result, Congress enacted the superpriority statute, which allows the attorney to recover her fees from the judgment, after which the IRS takes the remainder of the award. Simply put, Congress recognized that part of something is better than all of nothing. Any benefit to attorneys under the statute is merely incidental, "a means to the end of assisting the Government in its tax collection." *Hill, Christopher & Phillips,* 535 F.Supp. at 809.

Not all attorney's liens can claim superpriority. Section 6323(b)(8) contains one important exception, which, in keeping with the statute's purpose of maximizing tax collection, denies superpriority to an attorney's lien on:

[A]ny judgment or amount in settlement of a claim or of a cause of action against the United States to the extent that the United States *offsets* such judgment or amount against any liability of the taxpayer to the United States.

26 U.S.C. § 6323(b)(8) (emphasis added). The reason for this exception is simply that the rationale for granting superpriority is absent when an attorney pursues a claim against the United States on behalf of a tax

delinquent client. In that event, the attorneys' efforts can only result in a net loss to the Treasury. Without the statute's exception, the United States would pay the judgment to the taxpayer, and immediately retrieve it under the tax lien, minus the attorney's fees. To avoid this, the statute allows the government simply to withhold paying the judgment, defeating the attorney's lien. In short, "an attorney is not given a share of the judgment when he merely takes money out of one of the Government's pockets so it can be put back in another." *Hill, Christopher & Phillips,* 535 F.Supp. at 809.

At issue here is the scope and application of this exception to superpriority. Montavon argues that the statute's exception denies superpriority only to the extent that the United States "offsets" the judgment against the tax liability, and that the term "offsets" should be narrowly construed to mean that the IRS must proceed by a setoff, a particular tax collection procedure. The central question then, is whether § 6323(b)(8)'s exception, by virtue of its use of the word "offsets," is inapplicable where, as here, the IRS acts by levy, rather than by setoff. Before proceeding to answer this novel question regarding the statute's meaning, it is necessary to consider several grounds on which the need to interpret the statute might be avoided.

## III

The IRS makes several arguments seeking to establish that it should prevail regardless of how narrowly the term "offset" in § 6323(b)(8) is read. All are ultimately unavailing.

First, the IRS points out that it did file a "Request for Offset" against Spectrum on November 18, 1991. This offset request unambiguously states that it pertains only to Spectrum's six GSA contract claims, and makes no mention of the EAJA award. By its terms, therefore, the offset request was inapplicable to the EAJA award. Consistent with this, the IRS issued notices of levy for the EAJA award. Despite this, the GSA

---

11. *See* 112 Cong.Rec. 22,226 (1966) (statement of Rep. Mills) ("The ability of the attorney like the skill of the repairman, in no small part accounts for the value of the property held by the taxpayer which is subject to the tax lien. It is only good business for the Government that the taxpayer be able to pay a reasonable fee to his attorney.").

contracting officer responsible for Spectrum's EAJA award mistakenly believed payment of the award to the IRS was pursuant to the offset request, rather than the notices of levy. But in the final analysis, this mistaken belief does not change the fact that the IRS actually obtained the award by levy, not by the November 18, 1991 "Request for Offset."

■ Next, the IRS relies on the statements of Michael Wueste, Spectrum's sole owner and president, to the effect that, before GSA issued the EAJA award, he told the IRS that he did not oppose the application of the award to Spectrum's tax liability. Given this, the IRS argues that, because Spectrum consented then and consents now to a setoff, a setoff therefore occurred under 31 U.S.C. § 3728.[12] In particular, the IRS focuses on the phrase providing that "[t]he Comptroller General shall discharge the debt if the plaintiff agrees to the setoff." 31 U.S.C. § 3728(b)(1). This language, the IRS argues, makes the taxpayer's consent controlling as to whether a setoff occurred. This argument misreads the statute. The taxpayer's consent is not even a necessary condition, let alone a sufficient one, for a setoff under § 3728. Subsection (a) of § 3728 directs the Comptroller General to execute a setoff where appropriate, regardless of the taxpayer's response. The taxpayer's consent is relevant only to how the Comptroller General carries out the setoff. If the taxpayer agrees, the Comptroller General simply performs the setoff. 31 U.S.C. § 3728(b)(1). But if the taxpayer denies the debt or resists the setoff, the Comptroller General must withhold an additional amount from the taxpayer's judgment to cover the costs of a civil action to collect the debt. 31 U.S.C. § 3728(b)(2). Spectrum's consent does not determine whether a setoff should or did occur. Rather, Spectrum's consent

merely determines what procedure the Comptroller General should follow in effecting the setoff.

■ Finally, the IRS maintains that it has not relinquished its common law or statutory right of setoff, and if a formal offset request is required, it will issue one now to GSA. The flaw in this argument is the assumption that the IRS can rewrite history as it wishes. The IRS has no such revisionist power, for the IRS has already taken the EAJA funds by levy, and no matter what documents are generated now, there is no longer a judgment to be offset.

### IV

■ Because the IRS's alternative arguments fail, it is necessary to reach and decide the question whether § 6323(b)(8)'s exception to superpriority applies in this case. More specifically, the question presented is whether the IRS has lost the benefit of the statutory exception to superpriority by electing to proceed by levy. In the end, the statute's evident purpose and legislative history establish that it does not employ the word "offsets" in a technical sense, designating one particular tax collection device to the exclusion of others, but instead uses the term to describe generally the set of alternative methods by which the IRS may apply liabilities owed against judgments payable. As a result, the IRS levy on Spectrum's EAJA award falls within § 6323(b)(8)'s exception, and the statute does not grant superpriority to this attorney's lien. The tax lien, being first in time, therefore defeats Montavon's lien.

While interpretation of the statute properly begins with the statute's language, the words of § 6323(b)(8) do not resolve the question raised here, for the term "offsets" may have either a highly technical or a more general meaning. In some ways, Congress

---

12. Section 3728 of Title 31 provides, in pertinent part, that:

(a) The Comptroller General shall withhold paying that part of a judgment against the United States Government presented to the Comptroller General that is equal to a debt the plaintiff owes the Government.

(b) The Comptroller General shall—
(1) discharge the debt if the plaintiff agrees to the setoff and discharges a part of the judgment equal to the debt; or
(2)(A) withhold payment of an additional amount the Comptroller General decides will cover legal costs of bringing a civil action for

broadly phrased the offset exception, suggesting an intent to include all methods by which the IRS might apply a judgment against a tax liability. Thus, the statute requires only that the offset be made by "the United States," rather than a particular entity such as "the Secretary," "the Commissioner," or "the Comptroller General," as more precisely required by various setoff statutes. *See* 26 U.S.C. § 6402; 31 U.S.C. § 3716; 31 U.S.C. § 3728. In addition, it is noteworthy that the term "offsets" appears as a verb rather than a noun, suggesting that Congress employed the word to describe the achievement of a particular effect, rather than the use of a particular device. In sum, the statutory language itself, although not determinative, points to the conclusion that § 6323(b)(8)'s offset exception does not have a narrow, technical meaning.

■ Where the statute's language is not determinative, congressional purpose and legislative history must assist interpretation,[13] and they do so compellingly here. There is no conceivable reason in principle or policy for Congress to differentiate between a levy and a setoff in this statute. A levy and a setoff are simply two different methods the United States may use to collect unpaid taxes when, as here, the IRS has assessed a tax deficiency against a person to whom another federal agency owes payment. A levy is a forceful remedy, by which the Secretary of the Treasury may seize and sell the taxpayer's property. 26 U.S.C. § 6331(b). The Secretary may also seize the taxpayer's prop-

erty, such as wages or other payments due, by serving a notice of levy on a party obligated to the taxpayer, such as the taxpayer's employer. If the employer surrenders the money to the Secretary, the employer is discharged from liability to the taxpayer. 26 U.S.C. § 6332(e). On the other hand, if the employer refuses to honor the levy, it becomes personally liable to the United States for the property's value. 26 U.S.C. § 6332(d)(1). As a provisional remedy, a levy is executed without prior judicial approval, but may be subsequently challenged in a wrongful levy action under 26 U.S.C. § 7426.

By way of comparison, a setoff may occur when two parties owe debts to one another. An equal amount of each debt is canceled, leaving only the remainder of the greater debt in existence. This right of setoff belongs to every creditor, including the United States, through common law, *United States v. Munsey Trust Co.*, 332 U.S. 234, 239, 67 S.Ct. 1599, 1601–02, 91 L.Ed. 2022 (1947), and additionally to the United States by statute. 31 U.S.C. § 3728(a). This statute provides that when a plaintiff obtains a judgment against the United States, but owes a debt to the government as well, the Comptroller General must perform a setoff, withholding payment of a portion of the plaintiff's judgment and discharging an equal amount of his liability.[14]

■ Although the distinction between a levy and a setoff is of consequence in some contexts,[15] Montavon can offer no reason in

the debt if the plaintiff denies the debt or does not agree to the setoff; and (B) have a civil action brought if one has not already been brought.

**13.** *See Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984).

**14.** In addition to the Comptroller General's authority under 31 U.S.C. § 3728, the head of any executive or legislative agency may perform an "administrative offset" of like effect. 31 U.S.C. § 3701(a)(1), 3716. These statutes have not displaced the United States' common-law right of setoff. *See Cecile Industries, Inc. v. Cheney*, 995 F.2d 1052 (Fed.Cir.1993).

**15.** Courts have sometimes been required to distinguish carefully whether the IRS proceeded by levy or by setoff. For example, when the IRS proceeds by lien and levy, as opposed to setoff, it must strictly comply with certain procedural re-

quirements, even if the seized property is held by another federal agency. *See Arford v. United States*, 934 F.2d 229, 232–34 (9th Cir.1991). Also, if the IRS elects to levy, the United States has waived its sovereign immunity for wrongful levy actions pursuant to 26 U.S.C. § 7426, whereas there is no jurisdiction under § 7426 to challenge a setoff. *See Capuano v. United States*, 955 F.2d 1427, 1429–1432 (11th Cir.1992); 26 C.F.R. § 301.7426–1(a)(1)(ii). If a wrongful levy action can be brought, the plaintiff must do so within nine months of the date of the levy, 26 U.S.C. § 6532(c), in contrast to the general six-year statute of limitations for claims against the United States. 28 U.S.C. § 2401(a); *see United Sand & Gravel Contractors, Inc. v. United States*, 624 F.2d 733, 736–39 (5th Cir.1980).

In several other cases, courts have recognized no distinction between a levy and a setoff, treating the government as if it acted by setoff, even though notices of levy were used. *See United States v. Warren Corp.*, 805 F.2d 449 (1st Cir.

principle or policy as to why an attorney should enjoy superpriority if the IRS sends a notice of levy rather than an offset request. Indeed, no such reason exists. Arcane and technical reasons may at times dictate that the IRS employ one collection remedy rather than another,[16] and Congress presumably did not contemplate that the availability of superpriority under § 6323(b)(8) would turn on such insignificant technicalities. Rather, it is plain that Congress enacted § 6323(b)(8) with one overriding purpose in mind, namely, to maximize collection of taxes. That purpose is equally well served whether the IRS acts by levy or by setoff, and is disserved by narrowly construing § 6323(b)(8) to grant superpriority here.

The legislative history behind § 6323(b)(8) reinforces the conclusion that Congress did not intend the offset exception to have a narrow meaning.[17] The House Report explains that an attorney will not enjoy superpriority "to the extent that the United States, *under any legal or equitable right*, offsets its liability under the judgment or settlement against any liability of the taxpayer to the United States." H.R.Rep. No. 1884, 89th Cong., 2d Sess. at 39 (1966) (emphasis added).[18] The report then offers two examples of means by which the government might offset a judgment, one from common law,[19] and the other from statute,[20] but this list is plainly not meant to be exhaustive. Debate on the House floor also indicated that the offset exception contained no technical restriction as to how the government applies the judgment against the debt. The bill's chief proponent explained that "[t]he right of offset would exist between two private parties each having claims against the other. We saw no reason for treating the Government worse in this situation, than we would a private party having a claim against the person involved." 112 Cong.Rec. 22,226 (1966) (statement of Rep. Mills). This legislative history reflects that Congress, in drafting § 6323(b)(8), did not have in mind any distinction between a levy and a setoff.

Although the question presented here is novel, it is worth noting that some courts have assumed, without deciding, that the off-

---

1986); *Aetna Insurance Co. v. United States*, 456 F.2d 773, 197 Ct.Cl. 713 (1972).

**16.** Montavon argues that it was impossible for the government to effect a setoff of Spectrum's EAJA award, and therefore the IRS could only recover by levy. Ordinarily, a judgment against a federal agency is paid through an appropriation of the necessary amount pursuant to 31 U.S.C. § 1304. The Comptroller General must certify such an appropriation, and may instead withhold paying the judgment by executing a setoff. 31 U.S.C. § 3728. In contrast, a federal agency must pay an EAJA award out of its own funds, that is, the moneys already appropriated to it. 5 U.S.C. § 504(d); 1 C.F.R. § 315.310. According to Montavon, because Spectrum's EAJA award apparently never crossed the Comptroller General's desk, a setoff under 31 U.S.C. § 3728 was impossible. Though the Comptroller General may have had no occasion to perform an offset here, the IRS or GSA might have been able to execute an administrative offset. *See* 37 U.S.C. §§ 3701(a)(1), 3716. But assuming that Montavon is correct, and a setoff was impossible here, this ably demonstrates that the IRS does not always enjoy an unrestricted choice of remedy, further indicating that Congress did not intend to differentiate in § 6323(b)(8) between setoffs and levies.

**17.** Congress created eight new categories of superpriority liens, including the attorney's liens, in the Federal Tax Lien Act of 1966. Pub.L. No. 89–719, § 101(a), 80 Stat. 1125. For a thorough review of the legislative history, see *United States v. First National Bank of Memphis*, 458 F.2d 560, 564–68 (6th Cir.1972).

**18.** The House and Senate reports each summarize the effect of the offset exception as follows:

However, under the bill, in a proceeding against the Government, the Government retains its right to set off against any recoveries from it any amounts due it by the taxpayer on account of any tax or any other debt or claim. This setoff means that the attorney's lien "superpriority" does not apply with respect to judgments he obtains for the taxpayer against the Government.

H.Rep. No. 1884, 89th Cong., 2d Sess. at 6 (1966); S.Rep. No. 1708, 89th Cong., 2d Sess. at 6 (1966) U.S.Code Cong. & Admin.News 1966, pp. 3722, 3727. The passage suggests that the key fact is whether the judgment obtained runs against the government, and not which procedure the IRS uses to collect the tax liability.

**19.** *See United States v. Munsey Trust Co.*, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947) (describing United States' right, as creditor, to apply debtor's money in its hands to extinguish debt owed).

**20.** 26 U.S.C. § 6402 (authorizing Secretary of Treasury to withhold tax refund and credit amount against tax liability).

set exception in § 6323(b)(8) applies equally to levies and setoffs. *United States v. $319,-820.00 in United States Currency,* 634 F.Supp. 700 (N.D.Ga.1986); *Brooks v. United States,* 271 F.Supp. 671 (E.D.Ky.1967). In each case, an attorney successfully defended against a forfeiture action brought against his client by the government, winning return of the money seized, but the IRS intercepted the released funds pursuant to a notice of levy before they were disbursed, leaving the attorney empty-handed. On these facts, the courts found that § 6323(b)(8)'s offset exception applied, and consequently neither attorney had superpriority, even though the IRS obtained the money by levy. *$319,820.00,* 634 F.Supp. at 701, 703; *Brooks,* 271 F.Supp. at 672, 674. Neither attorney appears to have raised Montavon's argument that a levy does not satisfy the statute.[21]

■ Finally, Montavon contends that, even if the tax lien is superior to his own, a constructive trust should be imposed for his benefit on a fair portion of the EAJA funds. Relying on the fact that he has received no reward for litigating Spectrum's EAJA claim, Montavon believes such a remedy is necessary to prevent unjust enrichment of Spectrum and the IRS, and to sustain the purposes of the EAJA. Montavon's reasoning proves too much, for it would justify repeal of § 6323(b)(8)'s offset exception, a provision which denies compensation to attorneys in every case to which it applies. *See United States v. $319,820.00 in United States Currency,* 634 F.Supp. 700, 704 (N.D.Ga.1986) (rejecting attorney's unjust enrichment theory because "the exception to 26 U.S.C. § 6323(b)(8) would be rendered meaningless"). An attorney who successfully litigates a claim against the United States on behalf of a tax delinquent client is not sup-

posed to be rewarded. This is the very result Congress intended under the statute.

Because the federal tax lien on Spectrum's EAJA award was first in time, and because any lien Montavon acquired on the award does not have superpriority under § 6323, summary judgment for the United States is granted.

An appropriate order will issue.

---

21. *Capuano v. United States,* 955 F.2d 1427 (11th Cir.1992), also discusses the offset exception without considering whether § 6323(b)(8) distinguishes between a setoff and a levy. In *Capuano,* a wrongful levy action under 26 U.S.C. § 7426, the court first determined that it had jurisdiction, meaning that it found that the IRS had used a levy, rather than "its common law right of setoff." *Id.* at 1428. The court then considered the IRS's argument that the attorney lacked superpriority under § 6323(b)(8)'s offset exception. The court held that the attorney's lien was first in time, and so had priority without resort to the superpriority statute. Given that the court in *Capuano* had already focused closely on the distinction between a levy and a setoff, it is noteworthy that the court did not suggest that the statute's offset exception might be inapplicable where the IRS proceeded by levy, as this would have been an alternative reason why § 6323(b)(8) did not support the IRS in the case.